64 A.3d 453

MARYLAND STATE COMPTROLLER OF the TREASURY

v.

Brian WYNNE, et ux.

No. 107, Sept. Term, 2011.

Court of Appeals of Maryland.

Jan. 28, 2013.

Opinion on Reconsideration May 17, 2013.

148

150

152

Brian L. Oliner, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellant.

Christopher T. Handman (Dominic F. Perella and Sean Marotta of Hogan Lovells US LLP, Washington, DC), on brief, for appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

McDONALD, J.

Federal and Maryland law allow for the attribution of corporate income to the corporation's shareholders—without being taxed at the corporate level—in defined circumstances. In particular, the income of a Subchapter S corporation is deemed to "pass through" to the shareholders who are then directly taxed on that income. Some or all of that income may be generated outside the state in which a shareholder resides.

The Maryland income tax law reaches all of the income of a Maryland resident. The State income tax law allows a credit against an individual's State tax liability for income taxes paid to other states based on the income earned in those states. However, that credit takes no account of, and cannot be taken against, the portion of the Maryland income tax known as the "county income tax."

This case poses the question whether the failure to allow a credit violates the federal Constitution when a portion of a Maryland resident taxpayer's income consists of significant "pass-through" income generated by a Subchapter S corporation in other states, apportioned to the taxpayer, and taxed by the states in which it was generated. The taxpayer has appealed an assessment by the State Comptroller that did not allow a credit against the county income tax portion of the Maryland income tax.

The Comptroller, as he should,[1] defends the tax law as written by the Legislature[2] and interpreted by this Court.[3] The taxpayers accept that interpretation, but assert that it is wanting when measured against the federal Constitution. They rely on a multitude of cases—virtually all of which are subsequent to the 1975 amendment of the Maryland tax law that uncoupled the credit from the county income tax—that

---

1. *See State v. Burning Tree Club, Inc.*, 301 Md. 9, 481 A.2d 785 (1984) (obligation of State official to defend constitutionality of statute enacted by General Assembly).

2. *See* Chapter 3, Laws of Maryland 1975.

3. *Comptroller v. Blanton*, 390 Md. 528, 890 A.2d 279 (2006).

assess state taxes against what has come to be known as the "dormant Commerce Clause."

Although the Maryland Tax Court ruled in favor of the Comptroller, the Circuit Court for Howard County reversed that decision and held that the statute's failure to allow such a credit violated the dormant Commerce Clause. For the reasons that follow, we find merit in the taxpayers' contentions and affirm the judgment of the Circuit Court.

## Background

*State Income Taxes*

A state may tax the income of its residents, regardless of where that income is earned. A state may also tax a nonresident on income earned within the state. Both of these propositions are consistent with the Due Process Clause of the Fourteenth Amendment. *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 462–63 & n. 11, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995); *New York ex rel. Cohn v. Graves*, 300 U.S. 308, 312–13, 57 S.Ct. 466, 81 L.Ed. 666 (1937). However, they raise the possibility of what might be termed "double taxation" when both the state of the taxpayer's residence and the state where the income was generated tax the same income. As explained below, the Commerce Clause of the federal Constitution sets certain constraints on this possibility, which the states recognize through the provision of credits for payments of out-of-state taxes.

*Maryland Individual Income Tax*

State law imposes an income tax on individuals. Maryland Code, Tax–General Article ("TG") § 10–101 *et seq.*[4] It is composed of three parts:

(1) a State income tax (the "State tax") at a rate set by the Legislature in statute, *see* TG § 10–105;

---

4. This law also imposes an income tax on corporations—which is not involved in the present case.

(2) a county income tax that applies only to residents of each county [5] (the "county tax") at a rate set by the county within the range allowed by statute, *see* TG §§ 10–103, 10–106; and

(3) a tax on those subject to State income tax but not the county tax (the "Special Non–Resident Tax" or "SNRT") at a rate equal to the lowest county tax, *see* TG § 10–106.1.

Thus, all individual taxpayers are subject to the State tax and either the county tax or the SNRT. These taxes are all collected by the Comptroller; the proceeds of the county tax are distributed to the relevant county.

*Credit for Income Taxes Paid to Other States*

[3] State law allows for an individual subject to the Maryland income tax to take a credit against the State tax for similar taxes paid to other states.[6] In particular:

> a resident may claim a credit only against the State income tax for a taxable year in the amount determined under [TG § 10–703(c) ] for State tax on income paid to another state for the year.

TG § 10–703(a). There are various exceptions to this credit, none of which are pertinent to this case.[7] In general, the credit is designed to ensure that Maryland receives, at a minimum, the Maryland income tax due on the taxpayer's

---

**5.** As is usually the case, the term "county" in this context includes Baltimore City. TG § 10–101(f).

**6.** In this context, the term "state" includes "a state, possession, territory, or commonwealth of the United States ... or ... the District of Columbia." TG § 10–101(u).

**7.** The credit is not allowed to:
 (1) a Maryland resident other than a fiduciary, if the laws of the other state allow the Maryland resident a credit for state income tax paid in Maryland;
 (2) a Maryland resident fiduciary, if the fiduciary claims, and the other state allows, a credit for state income tax paid to Maryland;
 (3) a Maryland resident for less than the full taxable year for tax on income that is paid to another state during residency in that state;
 (4) a nonresident of Maryland.
 TG § 10–703(b).

income that is attributable to Maryland, regardless of the another state's method or rate of taxation.[8] *Comptroller v. Hickey*, 114 Md.App. 388, 391, 689 A.2d 1316 (1997).

No credit is given against the county tax for income taxes paid in other states. TG § 10–703(a); *Comptroller v. Blanton*, 390 Md. 528, 890 A.2d 279 (2006). As this Court outlined in *Blanton*, a credit had previously applied with respect to the county tax. *See Stern v. Comptroller*, 271 Md. 310, 316 A.2d 240 (1974). However, in 1975, the Legislature amended the tax code to eliminate that credit. Chapter 3, Laws of Maryland 1975.[9]

## S Corporations and Income Taxes

A Subchapter S corporation or "S corporation" is a corporation—often a relatively small business—that meets certain requirements set forth in the Internal Revenue Code and makes an election to pass through its income and losses, for federal tax purposes, to its shareholders.[10] Each shareholder

---

8. The statute provides that the credit shall be computed as follows:

(1) Except as provided in paragraph (2) of this subsection, the credit allowed a resident under subsection (a) of this section is the lesser of:

(i) the amount of allowable tax on income that the resident paid to another state; or

(ii) an amount that does not reduce the State income tax to an amount less than would be payable if the income subjected to the tax in the other state were disregarded.

(2) If the credit allowed a resident under subsection (a) of this section is based on tax that an S corporation pays to another state, the credit allowable to a shareholder:

(i) may not exceed that shareholder's pro rata share of the tax; and

(ii) will be allowed for another state's income taxes or taxes apsi based on income.

TG 10–703(c).

9. The 1975 amendment was made to former Article 81, § 290(b), which was later recodified as part of the Tax–General Article. Chapter 2, Laws of Maryland 1988. It has been re-enacted several times without substantive change. *See* Chapter 1, 1st Special Session, Laws of Maryland 1992; Chapter 262, Laws of Maryland 1993; Chapter 134, Laws of Maryland 1995.

10. Douglas A. Kahn, et al., *Corporate Income Taxation* 220–21 (6th ed.2009).

reports his or her share of the S corporation's income and losses on their individual tax returns and is assessed federal income tax at the shareholder's individual rate. In that way, the income that the S corporation generates for its owners is taxed at one level—similar to the taxation of a partnership—rather than at two levels (corporate and shareholder) as is otherwise typically the case.[11] To accomplish this, the character of any item of income or loss of an S corporation "passes through" to its owners "as if that item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." 26 U.S.C. § 1366(b).

Some states accord similar pass-through treatment to the income of an S corporation; other states do not and require an S corporation to pay income tax directly. The Maryland income tax law incorporates, for the most part, the definitions of income under the Internal Revenue Code. *See* TG §§ 10–101(*l*), 10–107, 10–201 *et seq.* Accordingly, the income of an S corporation "passes through" and is attributed to its shareholders for purposes of the Maryland income tax law. *See* TG § 10–104(6); *see also* TG §§ 10–102.1, 10–304(3).

*The Wynnes and Maxim Healthcare Services*

The underlying facts are undisputed. The taxpayers are Brian and Karen Wynne ("the Wynnes"), a married couple with five children residing in Howard County. During the 2006 tax year, Brian Wynne was one of seven owners of Maxim Healthcare Services, Inc. ("Maxim"), a company that does a national business providing health care services, and owned 2.4% of its stock. Maxim had made an election under the Internal Revenue Code to be treated as an S corporation. As a result of that election, Maxim's income was "passed through" to its owners for federal income tax purposes, and

11. The relevant statutory provisions appear in Subchapter S of Chapter 1 of the Internal Revenue Code—hence the moniker "S corporation." *See* 26 U.S.C. § 1362(1). As is generally the case, the corporation is organized under the laws of a particular state; Subchapter S merely concerns its treatment for federal, and in some cases state, tax purposes.

the Wynnes reported a portion of the corporation's income on their individual federal income tax return.

Because Maryland accords similar pass-through treatment to the income of S corporations, the Wynnes also reported pass-through income of Maxim on their 2006 Maryland tax return. A substantial portion of the pass-through income had been generated in other states and was taxed by those states for the 2006 tax year.

In particular, for the 2006 tax year, Maxim filed state income tax returns in 39 states. Maxim allocated to each shareholder a pro rata share of taxes paid to the various states. The returns did not indicate payments of income taxes to any county or local entity in other states. The Wynnes claimed their pro rata share of such income taxes paid to other states as a credit pursuant to TG § 10–703(c) against their 2006 Maryland individual income tax, reflected on Maryland Form 502.

*Assessment and Appeal*

The Comptroller made a change in the computation of the local tax owed by the Wynnes and revised the credit for taxes paid to other states on the Wynnes' 2006 Maryland Form 502. The net result was a deficiency in the Maryland taxes paid by the Wynnes, and the Comptroller issued an assessment, which the Wynnes appealed.

On October 6, 2008, the Hearings and Appeals Section of the Comptroller's Office affirmed the assessment, although it revised it slightly.[12] The Wynnes then appealed to the Mary-

---

**12.** The Wynnes had originally submitted their return using the local tax rate for Carroll County and the Comptroller had later substituted the tax rate for Caroline County. The hearing officer concluded that the rate for Howard County should have been applied. There appears to be no dispute that the local tax should be computed using the rate for Howard County.

The Comptroller had determined that the Wynnes had incorrectly calculated the amount of the credit under an interpretation of TG § 10–703(c) that was more favorable to themselves. The hearing officer upheld the Comptroller's revised computation, a decision that the Tax Court affirmed. The Wynnes did not further appeal that issue.

land Tax Court where they argued, for the first time, that the limitation of the credit to the State tax for tax payments made to other states discriminated against interstate commerce in violation of the Commerce Clause of the United States Constitution. The Tax Court rejected that argument and affirmed the assessment on December 29, 2009.

The Wynnes then sought judicial review in the Circuit Court for Howard County. Following a hearing on the appeal, the Circuit Court reversed the Tax Court in a decision issued on June 29, 2011. The Circuit Court remanded the case to the Tax Court for further factual development and "an appropriate credit for out-of-state income taxes paid" on Maxim's income. An appeal was noted to the Court of Special Appeals on July 22, 2011. Prior to hearing and decision in the intermediate appellate court, this Court granted certiorari.

## Discussion

*Standard of Review*

■ The Tax Court is "an adjudicatory administrative agency in the executive branch of state government." [13] A decision of the Tax Court is subject to the same standards of judicial review as contested cases of other administrative agencies under the State Administrative Procedure Act. TG § 13–532(a)(1). In undertaking such review, this Court directly evaluates the decision of the agency [14]—in this case, the Tax Court.

■ When the Tax Court interprets Maryland tax law, we accord that agency a degree of deference as the agency that administers and interprets those statutes. *Comptroller v. Blanton*, 390 Md. at 533–35, 890 A.2d 279. In this case, the Tax Court's decision required the application and analysis of

Neither of these issues is before us.

**13.** *Furnitureland S., Inc. v. Comptroller*, 364 Md. 126, 137 n. 8, 771 A.2d 1061, 1068 n. 8 (2001); *see also* TG § 3–102.

**14.** E.g., *People's Counsel for Baltimore County v. Surina*, 400 Md. 662, 681, 929 A.2d 899, 910 (2007).

cases interpreting the United States Constitution. Because our review of its analysis turns on a question of constitutional law, we do not defer to the agency's determination. *Frey v. Comptroller,* 422 Md. 111, 138, 29 A.3d 475 (2011).

*The Dormant Commerce Clause*

■ The Wynnes do not contest the State's authority to tax their income, wherever earned, under the Due Process Clause. Rather, they base their challenge to the Comptroller's assessment on what has come to be known as the "dormant Commerce Clause" of the United States Constitution. *See, e.g., Quill Corp. v. North Dakota,* 504 U.S. 298, 313 n. 7, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) ("[a] tax may be consistent with due process and yet unduly burden interstate commerce"). The dormant Commerce Clause is a restriction on State power that is not explicitly articulated in the Constitution but that has been derived as a necessary corollary of a power specifically conferred on Congress by the Constitution.

■ The Commerce Clause provides Congress with the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." United States Constitution, Article I, § 8, cl. 3. "Though phrased as a grant of regulatory power to Congress, the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality,* 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). This negative aspect of the Commerce Clause is an "implied limitation on the power of state and local governments to enact laws affecting foreign or interstate commerce." *Board of Trustees v. City of Baltimore,* 317 Md. 72, 131, 562 A.2d 720, 749 (1989).

We assess first whether the dormant Commerce Clause is implicated by the county tax and, if so, whether the failure to provide a credit for out-of-state taxes violates the dormant Commerce Clause.

*Does the Application of the County Tax without a Credit Implicate the Dormant Commerce Clause?*

■ Although each of the three components of the State income tax has its own label and is created by different code provisions, each is for federal constitutional purposes a state income tax. *Frey*, 422 Md. at 141–42, 29 A.3d 475. In any event, whether the tax is nominally a state or county tax is irrelevant for purposes of analysis under the dormant Commerce Clause because a state may not unreasonably burden interstate commerce through its subdivisions any more than it may at the state level. *Associated Industries v. Lohman*, 511 U.S. 641, 650–51, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994).

■ Much recent case law concerning the dormant Commerce Clause has been "driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Dep't of Revenue v. Davis*, 553 U.S. 328, 337–38, 128 S.Ct. 1801, 170 L.Ed.2d 685 (2008) (internal citation and quotation marks omitted). While many cases construing the dormant Commerce Clause concern state taxation, "[t]he dormant Commerce Clause protects markets and participants in markets, not taxpayers as such." *General Motors Corp. v. Tracy*, 519 U.S. 278, 300, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). Therefore, the dormant Commerce Clause will not affect the application of a tax unless there is actual or prospective competition between entities in an identifiable market and state action that either expressly discriminates against or places an undue burden on interstate commerce. *Id.* This impact must be more than incidental. *United States v. Lopez*, 514 U.S. 549, 559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

■ The Comptroller argues that the county income tax is not directed at interstate commerce and that the Wynnes have failed to identify any interstate commercial activity affected by a failure to allow a credit against that tax for tax payments to other states. However, application of the dormant Commerce Clause is not limited to circumstances where physical goods enter the stream of commerce. For

example, a state tax exemption related to the movement of people across state borders for economic purposes has been held to implicate interstate commerce and violate the dormant Commerce Clause. *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 574, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997); *see also Edwards v. California*, 314 U.S. 160, 172, 62 S.Ct. 164, 86 L.Ed. 119 (1941) (state statute prohibiting transport of indigent persons into the state unconstitutional under Commerce Clause). Moreover, even when a state tax is imposed on an intrastate activity, if that tax substantially affects interstate commerce, the tax is subject to scrutiny under the Commerce Clause. *See, e.g., Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 332, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) (state securities transfer tax unconstitutional under dormant Commerce Clause to the extent it taxed in-state stock transfers resulting from out-of-state sales at a greater rate than in-state transfers resulting from in-state sales).

The Comptroller asserts that the Wynnes are subject to Maryland income taxes because of their status as Maryland residents and not because of their activities in intrastate or interstate commerce. But this is a false dichotomy. In fact, they are subject to the income tax because they are Maryland residents *and* because they have income derived from intrastate and interstate activities; other states may also tax some of that same income because it derives from activities in those state. This case concerns the constitutional constraint on the otherwise overlapping power to tax such income.

In making his argument based on a state's power to tax its own residents, the Comptroller relies on several cases from other states that fail to distinguish the constraints on state taxation imposed by the dormant Commerce Clause from those imposed by the Due Process Clause or that are otherwise distinguishable from the case. Those cases are not persuasive.[15]

---

**15.** For example, in *Keller v. Department of Revenue*, 319 Or. 73, 872 P.2d 414 (1994), an Oregon taxpayer sought a tax credit for taxes paid

The limitation of the credit for payments of out-of-state income taxes to the State portion of the Maryland income tax can result in significantly different treatment for a Maryland resident taxpayer who earns substantial income from out-of-state activities when compared with an otherwise identical taxpayer who earns income entirely from Maryland activities. In particular, the first taxpayer may pay more in total state and local income taxes than the second. This creates a disincentive for the taxpayer—or the S corporation of which the taxpayer is an owner—to conduct income-generating activities in other states with income taxes. Thus, the operation of the credit with respect to the county tax may affect the interstate market for capital and business investment and, accordingly, implicate the dormant Commerce Clause. *See,*

---

to the State of Washington under Washington's business and occupations tax. The Oregon Supreme Court declined to entertain the Commerce Clause challenge. In an opinion largely devoted to a determination that the Washington tax was an excise tax rather than an income tax, the Oregon court devoted only a single paragraph to the taxpayer's contentions that the failure to allow a credit in Oregon for the Washington tax contravened various federal constitutional provisions, including the Commerce Clause, and summarily rejected those arguments on the basis of several cases construing the Due Process Clause without acknowledging the separate constraint of the dormant Commerce Clause.

*Tamagni v. Tax Appeals Tribunal,* 91 N.Y.2d 530, 673 N.Y.S.2d 44, 695 N.E.2d 1125 (1998), *cert. denied,* 525 U.S. 931, 119 S.Ct. 340, 142 L.Ed.2d 280 (1998) concerned possible multiple taxation arising out of the fact that both New Jersey and New York classified the taxpayer as a resident, with the result that both states sought to tax investment income from intangible property, such as interest and dividends, and neither provided a credit for taxes paid to the other state with respect to that income. The New York Court of Appeals reasoned that, since the intangibles had no connection to any geographic location, there was no interstate market impacted by the tax, and thus the Commerce Clause was not implicated. *Id.* at 1130, 1134 Unlike *Tamagni,* the present controversy does not concern investment income from intangibles, but rather income attributed directly to the taxpayer and apportioned according to geographic ties.

*See also Luther v. Commissioner of Revenue,* 588 N.W.2d 502, 510–12 (Minn.1999) (income tax on non-domiciliary resident did not risk multiple taxation due to credit); *Stelzner v. Commissioner of Revenue,* 621 N.W.2d 736, 741 (Minn.2001) (income tax on non-domiciliary residents was consistent with due process and did not threaten multiple taxation as domiciliary state lacked an income tax).

*e.g., Fulton Corp. v. Faulkner,* 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996) (North Carolina property tax on intangibles that taxed investments in out-of-state businesses at a higher rate violated the Commerce Clause); *Boston Stock Exchange, supra.*

*Does Application of the County Tax without a Credit Violate the Dormant Commerce Clause?*

■ The Supreme Court has held that a state may tax interstate commerce without offending the dormant Commerce Clause so long as the tax satisfies a four-prong test. Under that test, a state tax survives a challenge under the dormant Commerce Clause if it:

(1) applies to an activity with a substantial nexus with the taxing state;

(2) is fairly apportioned;

(3) is not discriminatory towards interstate or foreign commerce; and

(4) is fairly related to the services provided by the State.

*Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *see also D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 30–31, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988).

The Wynnes apparently do not dispute that the application of the county tax in this case has a substantial nexus to Maryland or that it is fairly related to services provided by the State. Thus, for purposes of the present controversy, we focus on the remaining two prongs of the *Complete Auto* test: the requirement of fair apportionment and the prohibition against discrimination against interstate commerce.

*(1) Is the county tax without a credit fairly apportioned?*

■ The purpose of the apportionment requirement is to ensure that each state taxes only its fair share of an interstate transaction. *Goldberg v. Sweet,* 488 U.S. 252, 261, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). "It is a commonplace of constitutional jurisprudence that multiple taxation may well be offen-

sive to the Commerce Clause. In order to prevent multiple taxation of interstate commerce, the Court has required that taxes be apportioned among taxing jurisdictions, so that no instrumentality of commerce is subjected to more than one tax on its full value." *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 446–47, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979). "The rule which permits taxation by two or more states on an apportionment basis precludes taxation of all of the property by the state of the domicile. . . . Otherwise there would be multiple taxation of interstate operations." *Standard Oil Co. v. Peck,* 342 U.S. 382, 384–85, 72 S.Ct. 309, 96 L.Ed. 427 (1952).

■■■■■■ The dormant Commerce Clause does not mandate the adoption of a particular income allocation formula for apportionment. *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 274, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (states have "wide latitude" in the selection of an apportionment formula which will only be disturbed upon "clear and cogent evidence" that it leads to a "grossly distorted result"). In order to assess the fairness of apportionment courts look to whether a tax is "internally consistent" as well as "externally consistent." *Oklahoma Tax Comm'n v. Jefferson Lines,* 514 U.S. 175, 185, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995).

*(a) Is the county tax without a credit internally consistent?*

■■■■ "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every state in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Oklahoma Tax Comm'n v. Jefferson Lines,* 514 U.S. at 185, 115 S.Ct. 1331.

■■■■ Internal consistency is thus measured by the answer to the following hypothetical question: If each state imposed a

county tax without a credit in the context of a tax scheme identical to that of Maryland,[16] would interstate commerce be disadvantaged compared to intrastate commerce?

■ The answer is yes. In this scenario, TG § 10–703 (or its hypothetical equivalent in other states) would grant a credit against a taxpayer's home state income tax but not against the home county income tax for income taxes paid to other states. As a result, taxpayers who earn income from activities undertaken outside of their home states would be systematically taxed at higher rates relative to taxpayers who earn income entirely within their home state. Those higher rates would be the result of multiple states taxing the same income.

This is illustrated by the following example.

- *Tax rates.* Assume each state imposes a state tax of 4.75% on all the income of its residents, a county tax of 3.2% on all the income of residents, and a SNRT of 1.25% on the income of non-residents earned within the state.
- *Credit.* Assume that each state allows a credit for income taxes paid to other states that operates in the same fashion as TG § 10–703—*i.e.*, the formula for the credit and application of the credit take only the home state "state tax" into account.
- *Taxpayer with in-state income only.* Mary lives in Maryland and earns $100,000, entirely from activities in Maryland.

Mary owes $4,750 in Maryland state income tax (.0475 × $100,000), $3,200 in Maryland county income tax (.032 × $100,000) for a total Maryland tax of **$7,950.**

- *Taxpayer with multi-state income.* John lives in Maryland and earns $100,000, half ($50,000) from activities in

---

**16.** A state tax "must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme," and "proper analysis must take the whole scheme of taxation into account." *Maryland v. Louisiana,* 451 U.S. 725, 756, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 69, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963).

Maryland and half ($50,000) from activities in Pennsylvania.

Because John is a resident of Maryland, all of his income is subject to both the Maryland "state tax" and the "county tax" applicable to his county. Before the application of any credit, John owes $4,750 in Maryland state income tax (.0475 × $100,000), $3,200 in Maryland county income tax (.032 × $100,000) for a total Maryland tax of $7,950.

Because half of John's income was generated in Pennsylvania, John also owes $2,375 in Pennsylvania state income tax (.0475 × $50,000) and $625 with respect to the Pennsylvania SNRT (.0125 × $50,000) for a total Pennsylvania tax of $3,000.

John receives a credit in the amount of $2,375 with respect to his Maryland state income tax pursuant to credit formula set forth in TG § 10–703(c).[17] This reduces his Maryland income tax to $5,575.

---

**17.** Under TG § 10–703(c), the credit is computed as *the lesser of:*

(1) "the amount of allowable tax on income" paid to the other state—in this example, $3000, if we assume that the credit encompasses both the Pennsylvania state income tax and the Pennsylvania SNRT.
*and*
(2) "an amount that does not reduce the [Maryland] state income tax to an amount less than would be payable if the income subjected to tax in the other state were disregarded."
The following calculation determines the figure for second provision of the above formula: If the income subjected to tax in Pennsylvania in this example were disregarded, the Maryland state income tax would be $2,375 (.0475 × $50,000). Thus, under this provision, the credit is capped at $2,375—the difference between John's Maryland state tax liability ($4,750, as computed in the text) and the amount of Maryland state tax he would pay if his Pennsylvania income were ignored ($2,375).
Thus, the first method of figuring the credit yields $3,000 and the second method yields $2,375. Because the maximum allowable credit is the *lesser* of the two amounts, John would receive a credit in the amount of $2,375.
The parties disputed whether the SNRT would be included in the credit computation and whether doing so would change the result of this example. However, the same result obtains whether or not the

Thus, John owes a combined total of $8,575 in state income taxes.

As the above example demonstrates, a taxpayer with income sourced in more than one state will consistently owe more in combined state income taxes than a taxpayer with the same income sourced in just the taxpayer's home state. This may discourage Maryland residents from engaging in income-earning activity that touches other states. In the context of S corporations, it may encourage Maryland residents to invest in purely local businesses, and discourage businesses from seeking to operate both in Maryland and in other states. In effect, it acts as an extra tax on interstate income-earning activities. It fails the internal consistency test.[18]

While it is true that a failure to pass the internal consistency test does not always signal a constitutional defect in a state tax scheme, the circumstances under which the courts have tolerated a lack of internal consistency do not pertain here. One such case concerned a flat $100 annual fee imposed by Michigan upon trucks engaged in intrastate commercial hauling. *American Trucking Assns., Inc. v. Michigan Pub. Serv. Comm'n,* 545 U.S. 429, 125 S.Ct. 2419, 162 L.Ed.2d 407 (2005). The petitioners in that case challenged the fee on the ground that it discriminated against interstate carriers and unconstitutionally burdened interstate trade because the fee was flat but trucks carrying both interstate and intrastate loads engaged in less intrastate business than trucks carrying only intrastate loads. 545 U.S. at 431–32, 125 S.Ct. 2419. The Supreme Court held that the fee did not violate the dormant

---

Pennsylvania SNRT, as well as the Pennsylvania state tax, is included in the credit computation.

**18.** Some state courts have concluded that a tax that fails the internal consistency test is unconstitutional under the dormant Commerce Clause. *See Northwest Energetic Services, LLC v. California Franchise Tax Board,* 159 Cal.App.4th 841, 71 Cal.Rptr.3d 642, 658 (1st Dist.2008) (holding unconstitutional an unapportioned local tax to the extent that it applied to out-of-state business income); *M & Assocs., Inc. v. City of Irondale,* 723 So.2d 592, 598–99 (Ala.1998) (local franchise tax based on total gross receipts regardless of whether goods were sold in-state or out-of-state would result in state taking more than its fair share of taxes from interstate transaction).

Commerce Clause. In analyzing the internal consistency of the tax, the Court concluded that, if every state imposed such a fee, an interstate trucker doing local business in multiple states would have to pay hundreds or thousands of dollars in fees if it supplemented its interstate business by carrying local loads in many other states, thus an internal inconsistency. The Court nonetheless found no Commerce Clause violation because a business would have to incur such fees only because it engaged in local business in all those states. *Id.* at 438, 125 S.Ct. 2419. "An interstate firm with local outlets normally expects to pay local fees that are uniformly assessed upon all those who engage in local business, interstate and domestic firms alike." *Id.* Such a fee, in effect a toll on in-state activity, is factually distinguishable from the present case involving business performed and income earned outside of Maryland. Moreover, we are not aware of an instance in which a court has upheld an unapportioned *income* tax on the authority of *American Trucking*.

 The Comptroller advances an alternative argument. Because an individual can only be a resident of one county in the universe,[19] even if every taxing jurisdiction adopted Maryland's tax structure, the individual would only be required to pay a county tax once. This, argues the Comptroller, precludes the possibility of multiple taxation by operation of the county tax. However, this analysis appears to be inconsistent with the logic underlying this Court's holding in *Frey* that the Maryland SNRT is a state tax for constitutional purposes. 422 Md. at 142, 29 A.3d 475. Moreover, under dormant Commerce Clause analysis, there are generally only two levels of regulation, state and federal. *See Associated Indus. v.*

---

19. The county tax applies to a resident of a county if, on the last day of the taxable year, the person was domiciled in the county or maintained a principal residence or place of abode there. TG § 10–103(a). We assume, without deciding, that a person can be a resident of only one county under the statute. This may not be a safe assumption as the definition appears to allow for a principal place of abode that is different from the place of domicile, but it is fundamental to the Comptroller's argument.

*Lohman,* 511 U.S. 641, 650–51, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994). The Comptroller's analysis posits a third level, the local level, such that a local tax need only be considered in the light of local taxes in other jurisdictions. But there appears to be no authority in the case law for this position.[20]

*(b) Is the county tax without a credit externally consistent?*

 The next question is whether the current county tax scheme is externally consistent.[21] For this test, one must assess "whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg v. Sweet,* 488 U.S. 252, 262, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). This test looks to a state's "economic justification" for its claim on the value taxed "to discover whether a state's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing state." *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 185, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). "[T]he threat of real multiple taxation (though not by literally identical statutes) may indicate a state's impermissible overreaching." *Id.*

---

**20.** As this Court discussed in *Frey,* the SNRT is justified as a "compensatory" tax on non-residents that is analogous to the county tax and that is imposed at a rate equivalent to the county tax in at least one Maryland county. 422 Md. at 149–63, 29 A.3d 475. Accordingly, even if one is a resident of a county of the universe other than Maryland, one may be subject to a Maryland tax analogous to the county tax—a fact that undermines the Comptroller's theory that the county tax should be considered separately from state taxation for purposes of the Commerce Clause. Even if Commerce Clause analysis recognized a third layer of income taxation, the existence of the SNRT shows how vulnerable that layer would be to multiple taxation.

**21.** Although the external consistency test is only applied to confirm the proper apportionment of a tax already found to be internally consistent, *Oklahoma Tax Comm'n v. Jefferson Lines,* 514 U.S. 175, 185, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995), it seems prudent to address this issue given the possibility that dormant Commerce Clause jurisprudence will continue to develop in the wake of *American Trucking Assns., Inc. v. Michigan Pub. Serv. Comm'n,* 545 U.S. 429, 125 S.Ct. 2419, 162 L.Ed.2d 407 (2005).

Thus, to test for external consistency one asks: Does tax liability under the Maryland income tax code reasonably reflect how income is generated? Because no credit is given with respect to the county tax for income earned out-of-state, the Maryland tax code does not apportion income subject to that tax even when that income is derived entirely from out-of-state sources. Thus, when income sourced to out-of-state activities is subject to the county tax, there is a potential for multiple taxation of the same income. In those circumstances, the operation of the county tax appears to create external inconsistency.[22] This is further indication that the application of the tax in these circumstances without application of an appropriate credit violates the dormant Commerce Clause.[23]

---

**22.** In discussing the external consistency test, the Comptroller argues that the county tax has no effect on interstate activity on the basis that the Wynnes themselves did not directly participate in interstate commerce and the income in question is investment income. The Wynnes respond that Mr. Wynne was an officer of the company and therefore involved in its interstate activities though it is not readily apparent how that is relevant as the issue before us does not concern his salary. More to the point is that the income in question is "pass-through" income of an S corporation that was generated outside of Maryland. Under the Internal Revenue Code and the Maryland tax code, such income is attributed to shareholders like the Wynnes "as if [it] were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." 26 U.S.C. § 1366(b); TG § 10–107.

It is this treatment of pass-through income of S corporations that allows Maryland to tax non-resident individuals with no other connection to Maryland who have pass-through S corporation income from activities in Maryland. *See* TG § 10–401. Thus, the same provisions that form the basis for Maryland to tax such income also govern the characterization of such income. Such income is not necessarily or simply to be characterized as investment income.

**23.** Courts in other states have found local taxes that lack external consistency to be unconstitutional. *See Phila. Eagles Football Club, Inc. v. City of Philadelphia*, 573 Pa. 189, 823 A.2d 108, 131–35 (2003) (levy on 100 percent of media receipts where half the team's games were broadcast from locations outside the taxing jurisdiction held to be externally inconsistent even though tax passed internal consistency test); *City of Winchester v. American Woodmark Corp.*, 252 Va. 98, 471 S.E.2d 495, 498 (1996) (although business license tax had been held to be internally consistent, levy on 100 percent of revenues of locally headquartered company held to be externally inconsistent where the

### (2) Does the County Tax Discriminate against Interstate Commerce?

 Under the third prong of the *Complete Auto* test, a tax must not discriminate against interstate commerce. Even if a tax is fairly apportioned, it "may violate the Commerce Clause if it is facially discriminatory, has a discriminatory intent, or has the effect of unduly burdening interstate commerce." *Amerada Hess Corp. v. Director, Div. of Taxation, New Jersey Dep't of Treasury*, 490 U.S. 66, 75, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989). A state tax may not discriminate against a transaction because the transaction has an interstate element or because the transaction or incident crosses state lines. *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). A taxing scheme that encourages interstate businesses to conduct more of their business activities within the taxing state may be found to be discriminatory. *Amerada Hess Corp.*, 490 U.S. at 77–78, 109 S.Ct. 1617. Facially discriminatory state taxes are subject to the strictest scrutiny, and the "burden of justification is so heavy that 'facial discrimination by itself may be a fatal defect.'" *Oregon Waste Systems, Inc.*, 511 U.S. at 101, 114 S.Ct. 1345 (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)). There is no *"de minimis"* justification if a tax is found to actually discriminate against

---

income was derived in part from sales and manufacture located outside taxing jurisdiction and the tax bore no relationship to income generated in the jurisdiction); *Avanade, Inc. v. City of Seattle*, 151 Wash.App. 290, 211 P.3d 476, 482–83 (2009) (apportionment formula that allocated all revenues to headquarters city when substantial revenues were derived in other states found to be externally inconsistent).

A tax that risks multiple taxation but that survives external consistency scrutiny is the sales tax. *See Oklahoma Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 191, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). Similarly, taxes on services such as telephone calls have been upheld. *See Goldberg v. Sweet*, 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). The Court has permitted these taxes by noting that a tax on a buyer is different from a tax on a seller. *Oklahoma Tax Comm'n v. Jefferson Lines*, 514 U.S. at 190, 115 S.Ct. 1331. In this case, however, the Wynnes are sellers because their income is generated through the sale of a good or service, whereas a tax on a buyer is a tax on consumption.

interstate commerce. *Fulton Corp. v. Faulkner*, 516 U.S. 325, 332 n. 3, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). Discriminatory effect may lie in the tax itself, but it may also arise from interactions with other states' taxes. *See, e.g., Barringer v. Griffes*, 1 F.3d 1331, 1337–39 (2d Cir.1993) (state use tax on automobiles that provided credit for sales tax paid in-state, but not out-of-state was discriminatory).

Particularly pertinent to the present case is the Supreme Court's analysis of a North Carolina tax in *Fulton Corp. v. Faulkner, supra.* North Carolina imposed an "intangibles tax" on the value of corporate stock owned by North Carolina residents. The tax was computed as a fraction of the value of the stock, with the tax rate reduced to the extent that the corporation's income was subject to tax in North Carolina. 516 U.S. at 327–28, 116 S.Ct. 848. This resulted in a North Carolina stockholder being taxed at a higher rate for holdings in companies that did not do business in North Carolina and at lower rates for holdings in companies that did business in North Carolina. The Supreme Court held that the tax violated the dormant Commerce Clause because it discriminated against interstate commerce. *Id.* at 333, 344, 116 S.Ct. 848.[24] In striking down the tax, the Court stated: "[A] regime that taxes stock only to the degree that its issuing corporation participates in interstate commerce favors domestic corporations over their foreign competitors in raising capital among North Carolina residents...." *Id.* at 333, 116 S.Ct. 848.

This case presents a similar situation. The application of the county tax to the out-of-state pass-through income without application of a credit for out-of-state income taxes on the same income means that Maryland shareholders—the Wynnes in this case—may be taxed at a higher rate on income earned through Maxim's out-of-state activities than on income earned

---

**24.** The Court also held that the discriminatory aspect of the tax could not be justified as a valid "compensatory" tax—*i.e.,* a tax on interstate commerce that complements a tax on intrastate commerce to the extent that it "compensates" for the burdens imposed on intrastate commerce by imposing a similar burden on interstate commerce. 516 U.S. at 331 n. 2, 334–44, 116 S.Ct. 848. *See* note 25 below.

though its Maryland activities. This would appear to favor businesses that do business primarily in Maryland over their competitors who do business primarily out-of-state—at least in the context of ownership of a Subchapter S corporation. The only difference between *Fulton* and the present case is one of form. Whereas in *Fulton* it was North Carolina's own tax rate that varied, in the present case it is the imposition of an additional tax, the tax set by the state where the income was earned—and the failure to provide a credit for it in Maryland—that creates the discrimination. Nonetheless, the effect is the same.

While the failure to allow a credit is at the heart of the discrimination in this case, not every denial of a deduction or credit for taxes paid to another jurisdiction results in a violation of the dormant Commerce Clause. In *Amerada Hess v. New Jersey Dept. of the Treasury,* the Supreme Court evaluated the constitutionality of a New Jersey statute that denied to oil-producing companies a deduction for amounts paid under the federal windfall profits tax. Holding that the tax did not violate the Commerce Clause, the Court noted, "a deduction denial does not unduly burden interstate commerce just because the deduction denied relates to an economic activity performed outside the taxing State." 490 U.S. at 78 n. 10, 109 S.Ct. 1617.

*Amerada Hess* is distinguishable from the present case however. At issue in *Amerada Hess* was a state deduction for a federal income tax—a tax that a business would be subject to no matter where it was located in the United States, whether within New Jersey or elsewhere. By denying a tax credit in that case, New Jersey treated all similarly-situated taxpayers equally because a business was subject to the same rate regardless of whether the windfall profits were earned within New Jersey or elsewhere. By contrast, the failure to provide a credit against the county tax in this case penalizes investment in a Maryland entity that earns income out-of-state: an investment in such a venture incurs both out-of-state taxes and the Maryland county tax on the same income; a

similar venture that does all its business in Maryland incurs only the county tax.

The tax at issue in this case is also similar to the one in *Halliburton Oil Well Co. v. Reily*, 373 U.S. 64, 72, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963). There, a Louisiana statute had the discriminatory effect of imposing a greater tax on goods manufactured outside Louisiana than on goods manufactured within that state, thereby creating an incentive to locate the manufacturing process within Louisiana. Although the mechanism is different, the application of the credit in Maryland's income tax law has a similar discriminatory effect. The more a Maryland business can locate its value-creating activities within Maryland the less it will be taxed. *See also Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (application of tax exemption that disfavored in-state businesses with out-of-state clientele violated dormant Commerce Clause).

 Thus, the application of the county tax to pass-through S corporation income sourced in other states that tax that income, without application of an appropriate credit, discriminates against interstate commerce.[25]

## Conclusion

For the reasons explained above, the failure of the Maryland income tax law to allow a credit against the county tax for a Maryland resident taxpayer with respect to pass-through income of an S corporation that arises from activities in

---

**25.** Such a discriminatory tax may survive constitutional scrutiny if the tax is a "compensatory" tax. *See Oregon Waste Systems*, 511 U.S. at 102–3, 114 S.Ct. 1345; *see also Frey*, 422 Md. at 145–63, 29 A.3d 475 (analyzing whether Maryland SNRT is a compensatory tax). The Comptroller has not argued that failure to allow a credit against the county tax with respect to payments of out-of-state income taxes is part of a compensatory tax. *See Fulton Corp. v. Faulkner*, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996) (rejecting argument that North Carolina's discriminatory "intangibles" tax was a compensatory tax based on inability of state to collect corporate income tax from out-of-state corporations).

another state and that is taxed in that state violates the dormant Commerce Clause of the federal Constitution.[26]

■ As for relief, the Wynnes suggest in their brief that the Maryland county income tax, the credit, or some part of the Maryland tax scheme be "struck down." In fact, the county income tax itself is not unconstitutional. Nor is the credit, which serves to ensure that the Maryland income tax

---

26. Our colleague, Judge Greene, offers a thoughtful dissent to this conclusion. While we are not unsympathetic to the dissent as a matter of policy, we find its legal analysis unpersuasive.

The dissent first points to a hypothetical situation—not this case—in which the application of the credit for out-of-state tax payments with respect to income earned in another state with a higher tax rate than Maryland could lead to the "absurd result" that a county resident who earned all of his or her income in the other state with the higher income tax rate would pay little or no county income tax on that same income while a neighbor who earned a similar income from activity solely within Maryland and is taxed only in Maryland would pay county income tax. This rhetorical statement proves both too much and too little.

It proves too much because, in the situation posited by the dissent, the credit for the higher out-of-state tax payments would have a similar effect on the taxpayer's state income tax liability. But the dissent does not assert, and could not credibly suggest, that the state income tax would survive a challenge under the Commerce Clause without a credit for out-of-state tax payments made with respect to out-of-state income. It proves too little because the application of the credit has no effect on the taxpayer's liability for sales taxes, local property taxes, and other taxes unrelated to income that are used to provide state and county services.

The dissent also argues that key Supreme Court decisions on the application of the dormant Commerce Clause to state taxes are distinguishable on the basis that the taxes at issue in those cases were "facially discriminatory" in a way that the county tax in this case is not. But this is more a matter of semantics than substance. For example, in *Fulton Corp. v. Faulkner*, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), the North Carolina law in question allowed a deduction from the state intangibles tax for corporate income taxes paid in North Carolina, but no deduction for entities that were not subject to the state income tax (*i.e.*, entities that did business elsewhere)—thus effectively favoring intra-state commerce over interstate commerce. The failure to allow a credit in this case for out-of-state tax payments has the same effect as withholding a deduction in *Faulkner*. In the end, it is perhaps most telling that the dissent does not attempt to analyze the application of the county income tax without a credit under the *Complete Auto* test—the analysis that the Supreme Court has directed courts to apply in assessing State taxes under the Commerce Clause.

scheme operates within constitutional constraints. Nor is the Maryland income tax law generally. What is unconstitutional is the application—or lack thereof—of the credit to the county income tax. As this Court explained in some detail in *Blanton*, a credit previously applied to the county income tax in these circumstances. The county income tax was only eliminated from the computation and application of the credit by a 1975 amendment of the tax code. Chapter 3, Laws of Maryland 1975. It is that amendment, when applied to the particular circumstances of taxpayers like the Wynnes, that contravenes the Constitution.[27] On remand from the Circuit Court, the Tax Court should recalculate the Wynnes' tax liability in a manner consistent with this opinion.

JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED WITH DIRECTION TO REMAND TO THE TAX COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SHARED EQUALLY BY THE PARTIES.

BATTAGLIA and GREENE, JJ., dissent.

GREENE, J., dissenting, in which BATTAGLIA, J., joins.

I disagree with the Majority's conclusion that the federal Constitution's dormant Commerce Clause requires Maryland to reduce the Wynnes' county taxes. Since the early Nineteenth Century, the law has been:

[T]he power of taxation is one of vital importance ... retained by the states.... [T]he power of taxing the people and their property[ ] is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power, is found in the structure of the government itself. In imposing a tax, the legislature

---

**27.** Other provisions of the 1975 amendment and the later re-enactments are severable. *See Muskin v. State Department of Assessments and Taxation*, 422 Md. 544, 554 n. 5, 30 A.3d 962 (2011) ("there is a strong presumption that if a portion of an enactment is found to be invalid, the intent is that such portion be severed").

acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation.

*McCulloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 425, 428, 4 L.Ed. 579, 606, 607 (1819). The Wynnes may not agree that they should pay the Howard County tax without a credit pursuant to TG § 10–703. This, however, is an issue for the elected officials of Howard County and the State, not this Court. "It is not a purpose of the Commerce Clause to protect state residents from their own state taxes." *Goldberg v. Sweet,* 488 U.S. 252, 266, 109 S.Ct. 582, 591, 102 L.Ed.2d 607, 620 (1989) (noting additionally that the dormant Commerce Clause is not designed to protect the "insider who presumably is able to complain about and change the tax through the [state] political process"). The Maryland General Assembly's decision to apply a credit for taxes paid in other states to the Wynnes' state tax, and not their county tax, does not run afoul of the federal Constitution's dormant Commerce Clause.

The Wynnes live in Howard County where they benefit from the services provided by that county. *See Frey v. Comptroller,* 422 Md. 111, 150, 29 A.3d 475, 497–98 (2011). To pay for these services, Howard County, like every county in Maryland, including Baltimore City, assesses a tax. As the Majority notes, TG § 10–703 does not permit the Wynnes to apply a credit for taxes paid in other states to reduce the Howard County tax. *Comptroller v. Wynne,* 431 Md. 147, 157, 64 A.3d 453, 458 (2013). Rather, as we said in *Comptroller v. Blanton,* 390 Md. 528, 535, 543, 890 A.2d 279, 283, 288 (2006), residents of a Maryland county are required to pay for that county's services by paying the county tax without the credit. Otherwise, "if the taxpayers were allowed to pay a lesser amount of county income tax, it 'would have the possible absurd result of the [taxpayers] paying little or no local tax for services provided by the county while a neighbor with similar income, exemptions, and deductions might be paying a substantial local tax to support those services.'" *Blanton,* 390 Md.

at 536 n. 9, 890 A.2d at 284 n. 9 (quoting *Coerper v. Comptroller*, 265 Md. 3, 8, 288 A.2d 187, 189 (1972)).

The Majority acknowledges that Maryland law prohibits the Wynnes from applying a credit for taxes paid to other states to reduce their county taxes. *Wynne*, 431 Md. at 157, 64 A.3d at 458. The Majority, however, concludes that imposing a county tax without allowing for a credit pursuant to TG § 10–703 violates the dormant Commerce Clause because Maryland's taxing scheme fails two prongs of the *Complete Auto* four-part test, namely that it is not fairly apportioned, and it discriminates against interstate commerce. *Wynne*, 431 Md. at 166–67, 169–70, 171–73, 176–77, 64 A.3d at 464, 465–66, 467–68, 470–71. As we have said before, however:

> Declaring a statute enacted by the General Assembly to be unconstitutional and therefore unenforceable is an extraordinary act. Statutes are generally presumed to be Constitutional and are not to be held otherwise unless the Constitutional impediment is clear. We have said many times that since every presumption favors the validity of a statute, it cannot be stricken down as void, unless it plainly contravenes a provision of the Constitution.

*Maryland State Bd. of Ed. v. Bradford*, 387 Md. 353, 387, 875 A.2d 703, 723 (2005) (quotation and citations omitted). *See also San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 44, 93 S.Ct. 1278, 1302, 36 L.Ed.2d 16, 49 (1973) (noting that state laws are traditionally accorded a "presumption of constitutionality"). Because of this presumption, a heavy burden is on the Wynnes to prove that this Court should not enforce Maryland law as it is written.

The Majority states that before this Court can decide whether the dormant Commerce Clause has been violated, we must "assess first whether the dormant Commerce Clause is implicated by the county tax...." *Wynne*, 431 Md. at 161, 64 A.3d at 461. Contrary to the Majority's conclusion, however, it appears that the Wynnes have failed to meet their burden of showing that the dormant Commerce Clause is implicated.[1]

States have the power to impose taxes that may result in some overlap in taxation of income. *See Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 278–79, 98 S.Ct. 2340, 2346–47, 57 L.Ed.2d 197, 207–08 (1978) (concluding that it does not necessarily constitute a violation of the dormant Commerce Clause when two states' taxing schemes tax income differently, and this results in some overlap in taxation). As the Majority notes, "[T]he dormant Commerce Clause will not affect the application of a tax unless there is actual or perspective competition between entities in an identifiable market and state action that either expressly discriminates against or places an undue burden on interstate commerce. [*General Motors Corp. v. Tracy,* 519 U.S. 278, 300, 117 S.Ct. 811, 825, 136 L.Ed.2d 761, 781 (1997) ]. This impact must be more than incidental. *United States v. Lopez,* 514 U.S. 549, 559 [115 S.Ct. 1624, 1630, 131 L.Ed.2d 626, 637] (1995)." *Wynne,* 431 Md. at 162, 64 A.3d at 461–62. In the present case, the Wynnes have failed to prove that requiring them to pay a county tax without a credit either expressly discriminates against interstate commerce or places more than an incidental burden upon interstate commerce.

---

**1.** In *General Motors v. Tracy,* 519 U.S. 278, 300, 117 S.Ct. 811, 825, 136 L.Ed.2d 761, 781 (1997), the Supreme Court noted that "in the absence of actual or prospective competition" within "a single market" between those engaged in interstate commerce and those engaged in intrastate commerce, there can be no dormant Commerce Clause violation. Because of this, the New York Court of Appeals has determined that before a tax can be subjected to the *Complete Auto* test, the party challenging the tax must "identify the interstate market that is being subjected to discriminatory or unduly burdensome taxation." *In re Tamagni,* 91 N.Y.2d 530, 673 N.Y.S.2d 44, 695 N.E.2d 1125, 1131 (1998). "This requires, at the outset, identification of the similarly situated in-State and out-of-State interests which the tax treats differently." *Id.* The Wynnes argue that "Maryland taxpayers and companies that do business out of state, on the one hand, and those that restrict their trade to Maryland, on the other" constitute similarly situated parties in one market. These two groups are not similarly situated, however. Those who engage in out-of-state business enjoy the protections and markets provided by the states where they do business. Taxpayers and companies that restrict their business to Maryland only receive the protections and services provided by Maryland.

Therefore, the Wynnes have failed to prove that the dormant Commerce Clause is implicated.

The Howard County tax, assessed without a credit, does not expressly discriminate against interstate commerce. As the Comptroller argues, the Howard County tax is directed at income earned by residents of Howard County, not interstate commerce.[2] And while, as the Majority notes, the dormant Commerce Clause "is not limited to circumstances where physical goods enter the stream of commerce[,]" *Wynne*, 431 Md. at 162–63, 64 A.3d at 462, the other cases the Majority relies on all involve situations where, unlike the present case, the law was facially discriminatory. The Majority looks to *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997), *Edwards v. California*, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977), and *Fulton Corp. v. Faulkner*, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996) to conclude that the dormant Commerce Clause is implicated. In all four of those cases, the challenged tax law facially discriminated against interstate commerce by either first distinguishing between organizations and businesses that were involved in interstate business and those organizations and

---

**2.** In most of the cases where the Supreme Court has subjected a tax to the *Complete Auto* test, the tax was directly on interstate commerce itself or items in interstate commerce. *See Okla. Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 177, 183, 115 S.Ct. 1331, 1334, 1337, 131 L.Ed.2d 261, 267, 271 (1995) (analyzing an Oklahoma tax on a bus ticket for interstate travel); *Goldberg*, 488 U.S. at 255–56, 259–60, 109 S.Ct. at 585–86, 587–88, 102 L.Ed.2d at 613, 615–16 (analyzing an Illinois state tax on interstate calls); *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 26, 31–33, 108 S.Ct. 1619, 1620–21, 1623–24, 100 L.Ed.2d 21, 24, 28–29 (1988) (analyzing a Louisiana use tax on catalogs printed outside the state and shipped to persons in the state); *Wardair Canada v. Fla. Dept. of Revenue*, 477 U.S. 1, 3–4, 8, 106 S.Ct. 2369, 2370–71, 2373, 91 L.Ed.2d 1, 7, 10 (1986) (analyzing a tax on fuel sold in Florida and used in interstate commerce). The challenged Howard County tax without a credit is assessed upon the income of residents of the County. While a portion of that income may derive from interstate commerce, the challenged tax is not directed to interstate commerce or items in interstate commerce. Rather, the connection to interstate commerce is more attenuated.

businesses that were only involved with intrastate business, and then imposing a disadvantage upon those involved in interstate transactions, or, in the case of *Edwards,* placing a restriction upon people moving in interstate commerce itself.

In *Camps Newfound/Owatonna,* the challenged Maine tax law granted a general exemption from real estate and personal property taxes for charities incorporated in Maine, but limited that exemption for organizations that mostly served non-Maine residents. 520 U.S. at 568, 117 S.Ct. at 1594, 137 L.Ed.2d at 859. The law, thereby, distinguished between groups that served people traveling in interstate commerce and those that only served Maine residents and explicitly benefitted the latter. 520 U.S. at 575–76, 117 S.Ct. at 1598, 137 L.Ed.2d at 864. In *Edwards,* the challenged law directly implicated interstate commerce and travel by prohibiting the transportation of indigent persons across state lines. 314 U.S. at 174, 62 S.Ct. at 167, 86 L.Ed. at 125–26. In *Boston Stock Exchange,* the challenged New York tax law distinguished between sales of securities made within New York and those made outside New York, and then imposed a lower tax rate and a cap on taxes for in-state sales and a higher tax rate and no cap on taxes for out-of-state sales. 429 U.S. at 319, 324–25, 97 S.Ct. at 602, 604, 50 L.Ed.2d at 518, 521. Finally, in *Fulton Corp.,* North Carolina imposed a tax on investments in corporations but allowed stockholders to reduce their tax liability based on the business the corporation did in North Carolina. 516 U.S. at 327–328, 116 S.Ct. at 852, 133 L.Ed.2d at 802–03. In *Fulton Corp.,* the United States Supreme Court noted that the tax facially discriminated against interstate commerce, and North Carolina "practically concede[d] as much." 516 U.S. at 333, 116 S.Ct. at 855, 133 L.Ed.2d at 806.

In the present case, nothing on the face of the Maryland tax laws imposing a county tax, TG § 10–103, or the Maryland tax law limiting credits for taxes paid in other states to state taxes, TG § 10–703, discriminates against interstate commerce. TG § 10–103 imposes a county tax on all residents with no distinction drawn based upon the source of the income. And, TG § 10–703, on its face, provides a benefit to

interstate commerce by applying a credit to reduce the amount of Maryland state taxes paid by residents who earned income in interstate commerce. The only distinction drawn between income earned in intrastate commerce and income earned in interstate commerce pursuant to these two laws is that a benefit is bestowed upon interstate commerce through the credit that is applied to state taxes. This can hardly be interpreted as discriminating against interstate commerce on the face of the law.

The fact that Maryland's tax scheme is not facially discriminatory is critical to the dormant Commerce Clause analysis. As the Majority notes, "[f]acially discriminatory state taxes are subject to the strictest scrutiny, and the 'burden of justification is so heavy that "facial discrimination by itself may be a fatal defect." ' " *Wynne*, 431 Md. at 173, 64 A.3d at 468 (quoting *Oregon Waste Systems, Inc. v. Dept. of Envtl. Quality*, 511 U.S. 93, 101, 114 S.Ct. 1345, 1351, 128 L.Ed.2d 13, 22 (1994) (in turn quoting *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250, 262 (1979))); *see also Frey*, 422 Md. at 144, 29 A.3d at 494 ("[F]acially discriminatory state taxes raise a presumption of per se invalidity."). In other words, when a court is examining a law that, on its face, draws a distinction between interstate and intrastate commerce and imposes a disadvantage to the former, the burden of proving that the law expressly discriminates against interstate commerce and that the dormant Commerce Clause is implicated is met. *See United Haulers Ass'n v. Oneida–Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338–39, 127 S.Ct. 1786, 1793, 167 L.Ed.2d 655, 664–65 (2007). In this case, there is no facial discrimination against interstate commerce, and thus, the burden of proving that the dormant Commerce Clause is implicated requires a higher level of proof.

As noted above, the Wynnes have the burden of proving that interstate commerce is implicated. The Wynnes, however, fail to meet this burden with the arguments they present. In arguing that the dormant Commerce Clause is implicated, the Wynnes primarily rely on two lines of arguments, both of which are inapplicable to the present case.

First, the Wynnes rely on our decision in *Frey* where we concluded that the "Special Nonresident Tax," or SNRT, implicated the dormant Commerce Clause.[3] The SNRT is applied to nonresidents doing business in Maryland. On its face, the SNRT singles out income from interstate commerce and applies a tax on that income. It is thus a "facially discriminatory state tax[ ]," and subject to "the strictest scrutiny[.]" *Frey*, 422 Md. at 144, 29 A.3d at 494. The county tax, on the other hand, draws no distinction between income earned in interstate and intrastate commerce and is not facially discriminatory. Therefore, unlike the SNRT, the county tax does not expressly discriminate against interstate commerce and our conclusion in *Frey* that the SNRT implicated the dormant Commerce Clause is inapplicable to the present case.

Second, the Wynnes rely on *Camps Newfound/Owatonna, Fulton Corp.*, and a case from the Minnesota Supreme Court, *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825 (Minn.2002). As noted above, *Camps Newfound/Owatonna* and *Fulton Corp.* address facially discriminatory laws. Likewise, *Chapman* addresses a facially discriminatory law. The law in question allowed Minnesota taxpayers to take a tax deduction for contributions to charities "located in and carrying on substantially all of its activities within [Minnesota]," but did not allow a tax deduction for contributions to non-Minnesota charities. 651 N.W.2d at 834. The Minnesota Supreme Court stated that "[o]n its face, the statute treats contributions to instate charitable organizations differently from contributions to out-of-state charitable organizations," and concluded that it was "facially discriminatory." 651 N.W.2d at 834. As noted above, a law that facially discriminates against interstate

---

3. Similarly, at oral argument before this Court, counsel for the Wynnes argued that, in footnote 14 of the *Frey* decision, this Court indicated that the county tax implicates the dormant Commerce Clause. A close reading of footnote 14 indicates that what we concluded was that "[t]he SNRT may thereby substantially affect interstate commerce and is consequently susceptible to Commerce Clause scrutiny." 422 Md. at 143 n. 14, 29 A.3d at 493 n. 14. We said nothing in the footnote about county taxes.

commerce necessarily implicates the dormant Commerce Clause. Maryland's tax scheme, which is not facially discriminatory, however, does not necessarily implicate the dormant Commerce Clause. Therefore, like *Camps Newfound/Owatonna* and *Fulton Corp.*, the conclusion that the law in *Chapman* implicated the dormant Commerce Clause is inapplicable to the present case.

In the absence of facial or express discrimination, an undue burden on interstate commerce must be shown.[4] *See Tracy,* 519 U.S. at 287, 117 S.Ct. at 818, 136 L.Ed.2d at 773 (internal quotation and citations omitted) ("The negative or dormant implication of the Commerce Clause prohibits state taxation ... or regulation ... that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace[.]"). In *Amerada Hess Corp. v. Dir., Div. of Taxation, New Jersey,* 490 U.S. 66, 78–79 n. 10, 109 S.Ct. 1617, 1624–25 n. 10, 104 L.Ed.2d 58, 70 n. 10 (1989), the Supreme Court, in considering New Jersey's denial

---

4. The Supreme Court in *Dept. of Revenue v. Davis,* 553 U.S. 328, 128 S.Ct. 1801, 170 L.Ed.2d 685 (2008), articulated the standard for when a nondiscriminatory law can violate the dormant Commerce Clause. It stated that "[a]bsent discrimination for the forbidden purpose [of economic protectionism], however, the law 'will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" 553 U.S. at 338–339, 128 S.Ct. at 1808, 170 L.Ed.2d at 695 (quoting *Pike v. Bruce Church,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970)); *see also Oregon Waste Sys., Inc. v. Dept. of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13, 21 (1994) (quotations omitted) ("If a restriction on commerce is discriminatory, it is virtually *per se* invalid. . . . By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."); *Bd. of Trustees v. Mayor and City Council of Baltimore City,* 317 Md. 72, 134–35, 562 A.2d 720, 750 (1989) (citations omitted) ("With regard to state regulatory legislation, the Supreme Court has long recognized that, while discrimination in favor of local economic interests is usually invalid under the Commerce Clause, nondiscriminatory legislation will be upheld unless the burden on interstate commerce outweighs the local interests effectuated by the legislation."). In the present case, the Wynnes have failed to prove that any alleged burden upon interstate commerce is "clearly excessive" in relation to the local services paid for by the Howard County tax.

of a state tax deduction for federal windfall profit tax payments, observed that "in the absence of discriminatory intent or a statute directed specifically at economic activity that occurs only in a particular location ... a deduction denial does not unduly burden interstate commerce just because the deduction denied relates to an economic activity performed outside the taxing State." The Wynnes, in failing to prove discriminatory intent or unacceptable statutory geographical specificity, have demonstrated neither an undue burden on interstate commerce nor an implication of the dormant Commerce Clause.[5]

---

**5.** In another section of their brief to this Court, the Wynnes argue that the dormant Commerce Clause requires taxes to be apportioned, which can be read as an assertion that an un-apportioned tax might implicate and violate the dormant Commerce Clause. Some unapportioned taxes could have a significant effect on interstate commerce such that they "unduly" burden interstate commerce, thereby implicating and violating the dormant Commerce Clause. *Amerada Hess*, 490 U.S. at 75, 109 S.Ct. at 1623, 104 L.Ed.2d at 68. The dormant Commerce Clause, however, does not protect against taxes and laws that have only an incidental effect on interstate commerce. *Fulton Corp.*, 516 U.S. at 331, 116 S.Ct. at 854, 133 L.Ed.2d at 805. TG § 10–703 provides a credit for state taxes, significantly diminishing any effect Maryland income taxes have on interstate commerce. As noted above there is a strong presumption that an act of the Maryland General Assembly is constitutional. Additionally, the Supreme Court has concluded that "[t]he dormant Commerce Clause protects markets and participants in markets, not taxpayers as such." *Tracy*, 519 U.S. at 300, 117 S.Ct. at 825, 136 L.Ed.2d at 781. The Wynnes have not provided evidence that any markets or market participants, as opposed to taxpayers, have been disadvantaged by some taxpayers being required to pay slightly more in taxes. Additionally, there is no evidence that, as the Majority fears, interstate commerce will be harmed because taxpayers will have a "disincentive ... to conduct income-generating activities in other states with income taxes." *Wynne*, 431 Md. at 164, 64 A.3d at 463. In fact, as the Majority notes, Maryland residents have paid a county tax without a credit pursuant to TG § 10–703 since the tax code was amended in 1975. *Wynne*, 431 Md. at 157–58, 64 A.3d at 458–59. There has been no evidence presented to this Court that Maryland companies or taxpayers have been deterred from engaging in interstate commerce over nearly four decades since 1975. In fact, at issue in the present case is the income generated by the Maxim Corporation, a company founded in 1988, from business in 39 other states where the income was taxed. Thus, even if we were to accept the argument that the federal Constitution requires the apportionment of taxes as a

The *Blanton* decision conclusively established that Maryland law applies TG § 10–703's tax credit only to state taxes, not county taxes. 390 Md. at 543, 890 A.2d at 288. The Wynnes asked this Court to conclude that settled Maryland law is unconstitutional under the dormant Commerce Clause. The presumption has always been that Maryland law is constitutional, and the Wynnes, as challengers of the Maryland tax law, have failed to overcome that presumption by proving that Maryland's tax scheme expressly discriminates against or unduly burdens interstate commerce such that the dormant Commerce Clause is implicated. The Wynnes may believe that it is bad policy to require them to pay the Howard County tax without a tax credit; however, they have failed to prove that it is in violation of the dormant Commerce Clause. Accordingly, I respectfully dissent.

Judge BATTAGLIA joins in the views expressed herein.

Opinion on Motion for Reconsideration by McDONALD, J.

The Comptroller has filed a Motion for Reconsideration and, Alternatively, a Motion for Stay of Enforcement of the Judgment. The Wynnes opposed that motion. The parties filed memoranda of law and other materials in support of their respective positions.

It appears appropriate to clarify two points raised in the papers submitted by the parties:

(1) The Comptroller raised the question of whether he could deny application of a credit to the Wynnes for income taxes paid by an S corporation, such as Maxim, in another state that does not accord pass-through treatment to S corporation income, but rather taxes the income of such a corporation in the same way that it taxes the income of a C corporation. The parties did not brief, and we did not consider, the ways in which other states may treat S corporation income other than as pass-through personal income of the corporation's share-

---

contention by the Wynnes that the dormant Commerce Clause is implemented, the Wynnes have failed to prove this.

holders. Our opinion does not foreclose different treatment in Maryland of income taxes paid in other states that are not based on passthrough personal income.

(2) A state may avoid discrimination against interstate commerce by providing a tax credit, or some other method of apportionment, to avoid discriminating against interstate commerce in violation of the dormant Commerce Clause. The Comptroller interprets a footnote in our earlier opinion to hold that a state must provide a tax credit. 431 Md. at 177 n.26, 64 A.3d at 470–71 n.26. While the footnote might have been worded more elegantly, it referred primarily to the method used by the Legislature in the Maryland income tax; we did not mean to preclude other methods that might be utilized in other contexts.

The Motion for Reconsideration is DENIED; however, we shall STAY the effective date of the mandate pending the disposition of a timely petition for certiorari filed by the Comptroller with the United States Supreme Court.