*Michael J. Holzheid, et al. v. Comptroller of the Treasury of Maryland, et al.*, No. 2374, September Term, 2017. Opinion by Battaglia, J.

**ADMINISTRATIVE LAW AND PROCEDURE – EXHAUSTION OF ADMINISTRATIVE REMEDIES**

When the legislature provides an administrative remedy as the exclusive means by which an aggrieved party may challenge a government action, the doctrine of administrative exhaustion requires the aggrieved party to exhaust the prescribed process of administrative remedies before seeking any other remedy or invoking the ordinary jurisdiction of the courts.

An analysis of the comprehensive nature of the Tax-General Article and the legislative history of the statutory provisions governing the refund of taxes makes it evident that the General Assembly intended to remove the adjudication of refund claims from the jurisdiction of the circuit court and vest exclusive jurisdiction of refund claims, including refunds of income taxes paid to the State, within the Maryland Tax Court.

Interest that is accrued and owed on an income tax refund, albeit not a part of the refund definitions provided by the Tax-General Article, is inextricably intertwined with refunds statutorily. As such, the Tax Court has exclusive jurisdiction of claims involving the amount of interest owed on an income tax refund. Appellants, therefore, were required to exhaust their administrative remedies with the Tax Court before seeking judicial review in the circuit court.

**ADMINISTRATIVE LAW AND PROCEDURE – EXCEPTION TO EXHAUSTION OF ADMINISTRATIVE REMEDIES REQUIREMENT – CONSTITUTIONAL QUESTIONS**

The constitutional exception to the general rule that requires the exhaustion of administrative remedies may be invoked under certain circumstances by a litigant when a challenge to the constitutionality or validity of a particular enactment is mounted. If validly raised, the exception permits a litigant to circumvent statutorily provided administrative remedies and invoke the jurisdiction of the courts.

Generally, to come within the constitutional exception, a challenge must be to the enactment as a whole, where the sole contention raised in the court action is based on a facial attack of the constitutionality of the governmental action. The constitutional exception is only available when an aggrieved party attacks the validity of the statute as a whole, and not merely a portion of the statute or the statute's application in a particular circumstance.

The constitutional exception, however, is not available where the Legislature intended the administrative remedy to be exclusive and no relief available alternative to the statutorily prescribed administrative remedy and subsequent judicial review exists, even when the constitutional challenge mounted against an enactment is facial. Furthermore, a facial constitutional challenge will not stand if it ultimately requires a factual exploration.

While appellants challenge the General Assembly's authority to set a reduced interest rate on refunds owed to taxpayers affected by *Wynne v. Comptroller*, 431 Md. 147 (2013), *aff'd*, 135 S. Ct. 1787 (2015), they could not invoke the constitutional exception to the rule requiring the exhaustion of administrative remedies, because as held, the statutory remedies provided by the Tax-General Article are exclusive and disposition of the underlying claims would require factual exploration.

**ADMINISTRATIVE LAW AND PROCEDURE – CIVIL RIGHTS – TAXATION – EXHAUSTION OF ADMINISTRATIVE REMEDIES**

While litigants are not generally required to exhaust state administrative remedies before pursuing a claim under Section 1983 of Title 42, United States Code, principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration. As such, where the remedies provided by the State are "plain, adequate, and complete," the State may require a litigant challenging a state tax scheme to exhaust administrative remedies before bringing an action in state court pursuant to Section 1983.

The administrative remedies provided by the Tax-General Article, including an appeal to the Tax Court, are "plain, adequate, and complete," thereby obviating appellants' ability to circumvent the exclusive jurisdiction of the Tax Court by asserting claims pursuant to Section 1983 in state court.

Circuit Court for Baltimore City
Case No.: 24-C-15-005700

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2374

September Term, 2017

_____

MICHAEL J. HOLZHEID, ET AL.,

v.

COMPTROLLER OF THE TREASURY OF
MARYLAND, ET AL.

_____

Nazarian,
Arthur,
Battaglia, Lynne, A.
    (Senior Judge, Specially Assigned),

JJ.*

_____

Opinion by Battaglia, J.

_____

Filed:  March 28, 2019

* Chief Judge Matthew Fader and Judge Dan
Friedman did not participate in the Court's decision
to designate this opinion for publication pursuant to
Md. Rule 8-605.1.



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

When a Maryland resident earns income from sources outside of the State, the income is taxed as though earned in the State. *Comptroller v. Wynne*, 431 Md. 147, 156–57 (2013), *aff'd*, 135 S. Ct. 1787 (2015). Maryland, though, provides a credit against an individual's State tax liability for income taxes paid to other states levied on income earned in the other states.[1] Maryland Code (1988, 2010 Repl. Vol.), Section 10-703 of the Tax-General Article.[2] Prior to 2013, however, a credit to offset income taxes collected on behalf of Baltimore City and each of the counties, oftentimes referred to as a "piggy back" tax, *Coerper v. Comptroller*, 265 Md. 3, 5 (1972), was not available for a Maryland resident who earned out-of-state income, thereby, resulting in a "double taxation" on the local level.[3] *Wynne*, 431 Md. at 155. A change to this scheme was occasioned by a suit filed by Brian and Karen Wynne who challenged the double taxation by the counties and Baltimore City on income earned in other states.

---

[1] The credit is "designed to ensure that Maryland receives, at a minimum, the Maryland income tax due on the taxpayer's income that is attributable to Maryland, regardless of the []other state's method or rate of taxation." *Comptroller v. Wynne*, 431 Md. 147, 156–57 (2013) (citing *Comptroller v. Hickey*, 114 Md. App. 388, 391 (1997)), *aff'd*, 135 S. Ct. 1787 (2015).

[2] Section 10-703 of the Tax-General Article, Maryland Code (1988, 2010 Repl. Vol.) in pertinent part, provides: "Except as provided in subsection (b) of this section, a resident may claim a credit against the income tax for a taxable year in the amount determined under subsection (c) of this section for State tax on income paid to another state for the year."

[3] The Comptroller collects all taxes imposed pursuant to the Tax-General Article, accounts for the revenue from those taxes, and distributes that revenue as directed by the statutory scheme, Md. Code (1988, 2016 Repl. Vol.), § 2-109 of the Tax-General ("Tax-Gen.") Article, including the "income tax revenue from individuals attributable to the county income tax for that county," Md. Code (1988, 2016 Repl. Vol.), Tax-Gen. § 2-608(a).

The Wynnes have been Maryland residents living in Howard County for a number of years. 431 Md. at 148. In 2006, Mr. Wynne owned stock in Maxim Healthcare Services, Inc. ("Maxim"), a Subchapter S corporation.[4] 135 S. Ct. at 1793. That year, Maxim earned income in states other than Maryland, as it filed state income tax returns in 39 states. *Id.* As "pass-through" income earners of Maxim, the Wynnes reported a portion of the corporation's income on their joint federal and Maryland income tax returns. *Id.* On their 2006 Maryland income tax return, they claimed an income tax credit for income taxes they paid to other states pursuant to Section 10-703(c) of the Tax-General Article against not only their state tax, but also the "piggy back" tax. *Id.*; 431 Md. at 159.

The Comptroller, however, assessed a tax deficiency against the Wynnes and allowed them a credit against their Maryland "state" income tax but not against their "county" income tax. 135 S. Ct. at 1793. On appeal from the county disallowance, the Hearings and Appeals Section of the Comptroller's office slightly modified the assessment, but otherwise affirmed the Comptroller's decision, and the Maryland Tax Court affirmed. *Id.*

---

[4] Under federal law, S corporations allow shareholders "to elect a 'pass-through' taxation system under which income is subjected to only one level of taxation. The corporation's profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns." *Gitlitz v. Comm'r of Internal Revenue*, 531 U.S. 206, 209, 121 S. Ct. 701, 704 (2001) (citations omitted). Maryland provides similar pass-through treatment to the income of an S corporation. *Wynne*, 431 Md. at 158.

The Circuit Court for Howard County, on judicial review, however, reversed the decision on the basis that the tax system benefitting the counties and Baltimore City violated the Commerce Clause.[5] *Id.* The court remanded the case back to the Tax Court. The Court of Appeals, however, granted certiorari before the remand and before this Court heard the case. 431 Md. at 159.

The Court of Appeals affirmed the Circuit Court. In doing so, the Court evaluated the tax scheme under the four-part test set forth in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076 (1977), by which a tax is assessed under the Commerce Clause to see whether it "applies to an activity with a substantial nexus with the taxing state," "is fairly apportioned," "is not discriminatory towards interstate or foreign commerce," and "is fairly related to the services provided by the State." 431 Md. at 147 (citing *Complete Auto Transit, Inc.*, 430 U.S. at 279, 97 S. Ct. 1076)). In *Wynne*, the Court held that the tax scheme failed both the fair apportionment and nondiscrimination

---

[5] The Commerce Clause of the United States Constitution provides Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl.3. "Though phrased as a grant of regulatory power to Congress, the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Systems, Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 98, 114 S. Ct. 1345, 1349 (1994). The negative commerce clause, often referred to as the "dormant" Commerce Clause, operates as an "implied limitation on the power of state and local governments to enact laws affecting foreign or interstate commerce." *Frey v. Comptroller*, 422 Md. 111, 143 (2011) (quoting *Bd. of Trs. v. City of Baltimore*, 317 Md. 72, 131 (1989)). "This limit on the authority of state and local governments applies 'even when Congress has failed to legislate on the subject.'" *Id.* (quoting *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179, 115 S. Ct. 1331 (1995)).

parts of the *Complete Auto* Commerce Clause test. 431 Md. at 165–72; 173–76. With respect to the fair apportionment prong, the Court initially held that the tax failed the "internal consistency" test, for if every State adopted Maryland's tax scheme, the fruits of interstate commerce would be taxed at a higher rate than intrastate commerce. *Id.* at 166–71. The Court further held that the tax scheme failed the "external consistency" test because it created the risk of multiple taxation on the same income. *Id.* at 171–72.

In terms of nondiscrimination, the Court noted that because the tax scheme denied residents a credit on income taxes paid to other states and so taxed income earned interstate at a rate higher than income earned intrastate, that the tax discriminated against interstate commerce. *Id.* at 173–76. The Court, however, noted that a "state may avoid discrimination against interstate commerce by providing a tax credit, or some other method of apportionment, to avoid discriminating against interstate commerce in violation of the dormant Commerce Clause." *Id.* at 189.

The State, though, filed a petition for certiorari to the Supreme Court, which was granted. 572 U.S. 1134, 134 S. Ct. 2660 (May 27, 2014). The Supreme Court affirmed and held that because Maryland failed to provide a credit against the county portion of income taxes, the Maryland tax scheme as applied to the Wynnes necessarily violated the dormant Commerce Clause, for reasons similar to those postulated by the Court of Appeals. 135 S. Ct. at 1792.

As a result, Wynne and others similarly affected by having had paid county income taxes as well as taxes to other states for income earned therein became entitled to refunds of a portion of their Maryland "piggy back" taxes. Many of the individuals

4

affected by *Wynne* then filed amended tax returns with the Comptroller, claiming a refund on the portion of tax paid to the counties to which no credit for out-of-state taxes had been provided.

At the time of the *Wynne* litigation, the interest rate on unpaid income tax refunds was 13% without regard to the source of the income. Maryland Code (1988, 2010 Repl. Vol.), Section 13-604 of the Tax-General Article.[6] While *Wynne* was pending before the Supreme Court, though, the General Assembly enacted Section 16 of the Budget Reconciliation and Financing Act of 2014 ("Section 16"),[7] which reduced the interest rate

---

[6] Section 13-604(b) of the Tax-General Article, Maryland Code (1988, 2010 Repl. Vol.) provided

> [o]n or before October 1 of each year, the Comptroller shall set the annual interest rate for the next calendar year on refunds and moneys owed to the State as the percent, rounded to the nearest whole number, that is at the percent that equals the greater of:
>
> (1) 13%; or
>
> (2) 3 percentage points above the average prime rate of interest quoted by commercial banks to large businesses during the State's previous fiscal year, based on determination by the Board of Governors of the Federal Reserve Bank.

[7] The Fiscal and Policy Note for the Budget Reconciliation and Financing Act of 2014, provided

> [t]he Comptroller's Office advises that in the event that the Supreme Court rules against the State, it is currently estimated that local governments may owe $51.0 million in interest attributable to "protective claims." Protective claims are returns filed by taxpayers within the statute of limitation for that year, where the taxpayer believes that the State has made an error in the
>
> (continued . . .)

5

on refunds under *Wynne* to approximately 3%.[8]  2014 Maryland Laws, Chapter 464, Section 16.[9]

In the present case, Michael J. Holzheid, Bruce Feinerman, and Jeffrey and Arielle Grill, individuals affected by *Wynne*, also filed amended Maryland income tax returns claiming an additional credit against the "piggy back" portion of their Maryland personal income tax.  They also claimed refunds of Maryland taxes that they had, under *Wynne*, overpaid in prior years, along with applicable interest, and ultimately, they received refunds, but with interest calculated, not at 13%, but, pursuant to Section 16.

---

(continued . . .)

> application of taxation.  Under the current law, the Comptroller owes interest on those refunds going back to the date of filing.  However, interest would not be due for the taxpayers that filed an amended return and did not file a protective claim.

2014 Leg., Reg. Sess. (Md. 2014), Fiscal and Policy Note at 67, http://mgaleg.maryland.gov/2014RS/fnotes/bil_0002/sb0172.pdf [https://perma.cc/337X-YTWF].

[8] Section 16 applies only to the *Wynne* income tax refunds attributable to tax years from December 31, 2005 through 2015.  2014 Maryland Laws, Chapter 464, Section 20.

[9] Section 16 provides

> notwithstanding any other provision of law, the Comptroller shall set the annual interest rate for an income tax refund that is a result of the final decision under *Maryland State Comptroller of the Treasury v. Brian Wynne, et ux.*, 431 Md. 147 (2013) at a percentage, rounded to the nearest whole number that is the percent that equals the average prime rate of interest quoted by commercial banks to large businesses during the fiscal year 2015, based on a determination by the Federal Reserve Bank.

2014 Maryland laws, Chapter 464, Section 16.

Contending that they were entitled to 13% interest on their refunds, the litigants

filed a complaint on behalf of themselves and putative class members in the Circuit Court

for Baltimore City to challenge the legality of Section 16.[10]  In Count One of their

complaint, they facially challenged Section 16's reduced interest rate on the basis that it

---

[10] Brian and Karen Wynne, also, in an attempt to prevent the Comptroller from enforcing the reduced interest rate prescribed by Section 16 of the Budget Reconciliation and Financing Act of 2014, after the Comptroller denied their refund request at the pre-Section 16 interest rate, filed suit in the Maryland Tax Court.  The Tax Court determined that "[f]ollowing the exact same logic" as the Supreme Court did, "granting interest at a lower rate must also be unconstitutional[,]" because it violated the dormant Commerce Clause.  Order, *Brian & Karen Wynne v. Comptroller of Maryland*, No. 16-IN-00-0216 (Md. Tax Court May 23, 2018).  As such, the Tax Court found no occasion "to address any of the other rationales advanced by the [Wynnes] to invalidate the Statute."  *Id.*

The Comptroller sought judicial review of the Tax Court's decision in the Circuit Court for Anne Arundel County.  The judge reversed and concluded that Section 16 of the Budget Reconciliation and Financing Act of 2014 did not violate the dormant Commerce Clause.  Opinion at 11, *In the Matter of the Comptroller of Maryland v. Brian Wynne, et al.*, No. C-02-CV-18-00178 (Anne Arundel Cty. Cir. Ct. Dec. 21, 2018).  The judge remanded the case back to the Tax Court, however, to determine whether the lower interest rate applied to *Wynne* claimants "was a retroactive law in violation of the Due Process Clause of the 14th Amendment, was an unlawful taking in violation of the 5th Amendment's Takings Clause, or deprived [the Wynnes] of an accrued right in violation of the Maryland Declaration of Rights."  *Id.*  On January 18, 2019, the Wynnes appealed the ruling to this Court.

Brian and Karen Wynne have since filed a bypass petition for writ of certiorari with the Court of Appeals, asking the Court to determine: "Whether the Circuit Court correctly held that Section 16 of the Budget Reconciliation and Financing Act of 2014 does not violate the dormant Commerce Clause of the U.S. Constitution, even though it reduces the interest on tax refunds paid to a discrete class of taxpayers engaged in interstate commerce."  *In the Matter of the Comptroller of Maryland v. Brian Wynne, et al.*, No. C-02-CV-18-00178 (Anne Arundel Cty. Cir. Ct. Dec. 21, 2018), *petition for cert. filed Wynne v. Comptroller*, COA-PET-18-2019 (March 13, 2019).

violated the Fourteenth Amendment of the United States Constitution.[11]  In Count Two, they claimed that the reduced interest rate violated the Commerce Clause of the United States Constitution.  In Count Three, they questioned the reduction of the interest rate on the ground that it served as an unconstitutional taking without due process or just compensation, thereby, violating the Fifth Amendment,[12] as incorporated to the states by the Fourteenth Amendment of the United States Constitution.  And in Count Four, they alleged that the Comptroller was liable to them and all other putative class members, in his personal capacity, for the aforementioned alleged constitutional violations, pursuant to Section 1983 of Title 42, United States Code.

The State moved to dismiss the complaint on the ground that the group had failed to exhaust their administrative remedies for the resolution of tax disputes by failing to pursue their action in the Maryland Tax Court.  Initially, the Circuit Court denied the motion to dismiss, and subsequently, denied the State's motion for reconsideration.

---

[11] U.S. Const. amend. XIV, §1 provides

[a]ll persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[12] U.S. Const. amend. V, in pertinent part, provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Thereafter, the litigants filed a motion for class certification, which the State opposed, and both sides filed cross-motions for summary judgment.

At a hearing on the motions, Judge Yvette Bryant of the Circuit Court for Baltimore City revisited the State's motion to dismiss, and subsequently, dismissed the suit on the ground that the Circuit Court lacked jurisdiction, because the litigants failed to exhaust their administrative remedies. In so finding, Judge Bryant reasoned that "the process for resolution of issues related to tax refunds, including the proper rate of interest, rests exclusively with the Tax Court."

Judge Bryant noted, however, that if the Circuit Court had jurisdiction over the matter, she would have denied class certification, ruled that sovereign immunity barred claims against the Comptroller in his individual capacity, but would have ruled also that Section 16 violated the dormant Commerce clause, positing that

> [w]hile the court finds its determination that administrative remedies are a condition precedent to this court's consideration of Plaintiffs' cause of action, this court, in the absence of dismissal, would have found that Plaintiffs' claims against the Comptroller in his individual capacity are barred by sovereign immunity but that the remaining claims are not barred by sovereign immunity. Additionally, the court would have found that applying a different rate to any interest owed to Plaintiffs would violate the dormant Commerce Clause.
>
> The court has not provided in-depth written analysis as to what it would have found if ruling upon the parties' motions for summary judgment because of the determination that Plaintiffs must exhaust administrative remedies in this case. However, this court recognizes that the Court of Special Appeals may be called upon to review the court's determination, and, to that end, would like to advise of its view of the case in light of the parties' pleadings, limited exhibits, and arguments.

9

A timely Notice of Appeal was filed by the litigants, now the present Appellants, contending, primarily, that the Circuit Court erred in dismissing their action.[13]

For the reasons that follow, we shall affirm the judgment of the Circuit Court and hold that Appellants were required to exhaust their administrative remedies before the Maryland Tax Court prior to availing themselves of judicial review before the Circuit Court; we will not reach any of the other issues raised.

## DISCUSSION

Our review of the circuit court's grant of a motion to dismiss is de novo.[14] *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n of the State Highway Admin.*, 388 Md. 500,

---

[13] The Appellants raise the following issues:

1. In the *Wynne* cases, the Court of Appeals and the Supreme Court ruled that Maryland's discriminatory treatment of out-of-state income violated the dormant Commerce Clause of the United States Constitution. Did Maryland's reduction of the interest rate earned on *Wynne* refunds—and only *Wynne* refunds—also violate the dormant Commerce Clause?

2. Did the retroactive reduction of interest already earned on *Wynne* tax refunds violate the Takings Clause of the United States Constitution?

3. Were Plaintiffs required to exhaust their constitutional challenges to [the Budget Reconciliation and Financing Act of 2014's] discriminatory and confiscatory interest rate in the Maryland Tax Court?

4. Where thousands of taxpayers were injured by Maryland's unconstitutional reduction of the interest earned on *Wynne* refunds, did their claims satisfy the requirements for class action status under Rule 2-231?

[14] In a written opinion, Judge Bryant stated that she reached her determination by considering "limited exhibits" in addition to the parties' pleadings and arguments. Normally, when exhibits are considered on a motion to dismiss, the motion is converted

(continued . . .)

10

509 (2005); *Evans v. Cty. Council of Prince George's Sitting as Dist. Council*, 185 Md. App. 251, 256 (2009). In the course of that review, "we must determine whether the trial court's decision was legally correct[,]" *Med. Mgmt. & Rehabilitation Servs., Inc. v. Md. Dep't of Health & Mental Hygiene*, 225 Md. App. 352, 360 (2015) (citing *Napata v. Univ. of Md. Med. Sys. Corp.*, 417 Md. 724, 732 (2011)), and "accord no special deference to the Circuit Court's legal conclusions." *Heavenly Days Crematorium, LLC v. Harris, Smariga & Associates, Inc.*, 433 Md. 558, 568 (2013). We examine "whether the complaint, assuming all well-pleaded facts and reasonable inferences drawn therefrom in a light most favorable to the pleader, states a legally sufficient cause of action." *Reichs Ford Rd. Joint Venture*, 388 Md. at 509 (citing *Adamson v. Correctional Med. Servs. Inc.*, 359 Md. 238, 246 (2000)). Dismissal is proper only "if the complaint would fail to provide the plaintiff with a judicial remedy." *Id.* (citing *Bobo v. State*, 346 Md. 706, 709 (1997)).

The rationale underlying the exhaustion requirement stems from the "expertise which the agency can bring to bear in sifting the information presented to it" and the idea that allowing "interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance." *Soley v. Comm'n on Hum. Rel.*, 277 Md. 521,

---

(continued . . .)
into a motion for summary judgment. *See* Maryland Rule 2-322(c); *D'Aoust v. Diamond*, 424 Md. 549, 572 (2012). In the instant case, however, there is no indication in the record that any exhibits were considered by Judge Bryant during her evaluation of the motion to dismiss on the exhaustion claim.

11

526 (1976). Furthermore, administrative agencies "are fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings which are subject to judicial review." *Furnitureland South, Inc. v. Comptroller*, 364 Md. 126, 138 (2001) (quoting *Montgomery Cnty. v. Broadcast Equities, Inc.*, 360 Md. 438, 451 n. 8 (2000)). This includes the "constitutionality of an enactment as applied, as well as the constitutionality of enactment as a whole." *Prince George's Cnty. v. Ray's Used Cars*, 398 Md. 632, 651 (2007) (citation omitted).

The pivotal issue in the instant case involves whether Appellants needed to exhaust their administrative remedies before the Maryland Tax Court[15] when they challenged the reduction of the interest rate on their *Wynne* refunds. To resolve this issue, we turn to *Zappone v. Liberty Life Insurance Company*, 349 Md. 45 (1998), in which the Court of Appeals analyzed the relationship between statutorily provided administrative remedies and coextensive judicial remedies and defined the three possible decision-making alternatives as:

> First, the administrative remedy may be exclusive, thus precluding any resort to an alternative remedy. Under this scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.
>
> Second, the administrative remedy may be primary but not exclusive. In this situation, a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy.

---

[15] The Maryland Tax Court, although bearing a judicial nomenclature, is an administrative entity. Md. Code (1988, 2016 Repl. Vol.), § 3-102 of the Tax-General Article; *Comptroller v. Science Applications Intern. Corp.*, 405 Md. 185, 192 n. 3 (2008).

12

Third, the administrative remedy and the alternative judicial remedy may be fully concurrent, with neither remedy being primary, and the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy.

*Zappone*, 349 Md. at 60–61.

Which of the three categories is applicable to a particular administrative remedy is ordinarily a question of legislative intent. *Id.* at 61 (citations omitted). On occasion, the General Assembly will "expressly set forth its intent in this regard." *Id.* at 61–62 (providing examples of express legislative intent with regard to each of the three categories: exclusive, primary, and concurrent). Most often, however, statutes fail to specify the category in which an administrative remedy falls, leaving the task up to the courts. *Id.* at 62.

With respect to exclusivity, "[o]rdinarily a statutory administrative and judicial review remedy will be treated as exclusive only when the Legislature has indicated that the administrative remedy is exclusive or when there exists no other recognized alternative statutory, common law, or equitable cause of action." *Id.* Courts may also evaluate the comprehensiveness of an administrative remedial scheme to determine that the Legislature intended the administrative remedy to be primary, whereas a non-comprehensive administrative scheme suggests the contrary.[16] *Zappone*, 349 Md. at 64

---

[16] We note, however, that while the comprehensiveness of an administrative remedy is a factor typically examined in determining whether the administrative remedy is intended to be primary, the remedy must be primary in order to be exclusive.

(citing *Luskin's Inc. v. Consumer Protection Div.*, 338 Md. 188, 196–97 (1995); *Bd. of Ed. for Dorchester Cty. v. Hubbard*, 305 Md. 774, 787–92 (1986)).

Before determining whether appellants needed to exhaust their administrative remedies before the Maryland Tax Court when they challenged the reduction of the interest rate on their *Wynne* refunds, we will first determine whether individuals challenging a refund on income tax must exhaust their administrative remedies before the Tax Court. With respect to the recovery of refunds, before *Zappone*, the Court of Appeals, in *Apostol v. Anne Arundel County*, reasoned that the remedies contained in the tax code were exclusive:

> It is firmly established in this State that once a taxpayer voluntarily pays a tax or other governmental charge, under a mistake of law or under what he regards as an illegal imposition, no common law action lies for the recovery of the tax absent a special statutory provision sanctioning a refund. This is true even if payment is made under protest. Moreover, in these circumstances, no common law or declaratory judgment action lies to challenge the validity of tax so paid. . . . [W]here there is statutory authorization for a refund and a special statutory remedy set forth, that remedy is exclusive.

288 Md. 667, 672 (1980) (citing *Baltimore Cty. v. Xerox Corp.*, 286 Md. 220 (1979); *White v. Prince George's Cty.*, 282 Md. 641, 650–54 (1978); *Rapley v. Montgomery Cty.*, 261 Md. 98 (1971)). In *Washington Suburban Sanitary Commission v. C.I. Mitchell and Best Co.*, 303 Md. 544, 577 (1985), the Court further explained its holding in *Apostol*, stating that, "once the taxes were paid, the refund remedy necessarily became exclusive because under the voluntary payment rule, the declaratory judgment and injunction remedies had been extinguished." *See also Bowman v. Goad*, 348 Md. 199, 204 (1997) (stating that, in the context of refunds, "the General Assembly has now provided broad

14

administrative refund remedies covering every type of tax, fee, or charge improperly

collected by a Maryland governmental entity.").[17]

Utilizing the *Zappone* standard to determine exclusivity, we reach the same result

regarding refunds of income taxes. The Tax-General Article, in its entirety, is

comprehensive because it extensively, if not exhaustively, governs the means by which

state and local taxes are to be collected. *See Comptroller v. Science Applications Intern.

Corp.*, 405 Md. 185, 199 n. 4 (2008) (stating that the creation of the Tax-General Article,

enacted by Chapter 2 of the Laws of Maryland 1988, was a comprehensive re-enactment

of the general tax code). The Tax-General Article is also comprehensive in nature in that

it details specific procedures an aggrieved party must take when seeking relief from an

adverse decision of a tax collector,[18] which includes matters raised before the Maryland

Tax Court. *See Furnitureland South, Inc.*, 364 Md. at 134–35 (stating that the special

statutory remedies for the resolution of tax controversies, "involving both administrative

and judicial proceedings," provided by the General Assembly are "comprehensive" and

that the Court "has consistently treated the special statutory administrative remedies for

---

[17] While the aforementioned cases did not involve refunds on income taxes, the case law, nonetheless, has applied to a number of refund contexts and surely encompasses income tax refunds. These cases, however, at most, only tacitly address the Tax Court's role in the administrative remedy process as set forth by the tax code. They mostly involved instances in which an aggrieved party sought declaratory relief in the circuit court without adhering to the refund procedures provided by statute.

[18] Section 13-101(c) of the Tax-General Article, Maryland Code (1988, 2016 Repl.) defines "tax collector" as "the person or governmental unit responsible for collecting tax." This term includes the Comptroller, the Department of Assessments and Taxation, and the register of wills, with respect to inheritance tax issues. *Id.*

the determination of tax questions to be exclusive or primary."); *Comptroller v. Zorzit*, 221 Md. App. 274, 293–94 (2015) ("Given the extensive and comprehensive administrative remedies available to taxpayers under the Tax-General Article, we are persuaded that it is important to clarify and reinforce the necessity of exhausting those remedies before seeking relief in the circuit court[.]").

Within the breadth of the tax code is the inclusion of the Maryland Tax Court. The Maryland Tax Court, created by Chapter 757 of the Laws of Maryland 1959 (HB619), is "an independent administrative unit of the State government."[19] Maryland Code (1988, 2016 Repl. Vol.), Section 3-102 of the Tax-General ("Tax-Gen.") Article. As a "quasi-judicial" agency, the Tax Court, has the authority to "hear, try, determine, or remand any matter before it." Tax-Gen. § 13-528(a)(1). Its jurisdiction, which is delineated in Section 3-103(a) of the Tax-General Article, provides that

> [t]he Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any tax issue, including:
>
> (1) the valuation, assessment, or classification of property;
>
> (2) the imposition of a tax;
>
> (3) the determination of a claim for refund;

---

[19] The Maryland Tax Court's progenitor, the State Tax Commissioner, was established in 1878. 1878 Md. Laws, Chap. 178. This name later changed to the State Tax Commission in 1914, 1914 Md. Laws, Chap. 841, and in 1959, was eventually dubbed the Maryland Tax Court. 1959 Md. Laws, Chap. 757.

(4) the application for an abatement, reduction, or revision of any assessment or tax; or

(5) the application for an exemption from any assessment or tax.

(1988, 2016 Repl. Vol.).

The Tax-General Article further delineates instances in which an aggrieved person or entity may appeal an adverse decision of the Comptroller, or other tax collector, to the Tax Court, and provides, in pertinent part, that

> [e]xcept as provided in subsection (b) of this section and subject to § 13-514 of this subtitle, within 30 days after the date on which a notice is mailed, a person or governmental unit that is aggrieved by the action in the notice may appeal to the Tax Court from:
>
> (1) a final assessment of tax, interest, or penalty under this article;
>
> (2) a final determination on an application for revision or claim for refund under § 13-508 of this subtitle;
>
> (3) an inheritance tax determination by a register or by an orphans' court other than a circuit court sitting as an orphans' court;
>
> (4) a denial of an alternative payment schedule for inheritance tax or Maryland estate tax;
>
> (5) a final determination on a claim for return of seized property under § 13-839 or § 13-840 of this title; or
>
> (6) a disallowance of a claim for refund under § 13-904 of this title.[20]

---

[20] The Appellants include in their argument that the Tax Court has jurisdiction under Section 13-510 of the Tax-General Article only in cases of a disallowance, but their argument is meritless, because of Section 3-103, which provides jurisdiction from the final determination of a claim for a refund.

17

(1988, 2016 Repl. Vol.). An aggrieved party must exhaust all administrative remedies with the appropriate tax determining agency before pursuing further appeal with the Maryland Tax Court. Tax-Gen. § 13-514. A matter before the Tax Court that arises under the two sections "shall be heard de novo and conducted in a manner similar to a proceeding in a court of general jurisdiction sitting without a jury." Tax-Gen. § 13-523. The Tax Court also "may reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to the Tax Court." Tax-Gen § 15-528(a)(2). The Tax Court will affirm the decision of a tax determining agency unless there is "affirmative evidence in support of the relief being sought or an error apparent on the face of the proceeding." Tax-Gen § 13-528(b).

Utilizing an analysis of the foregoing statutory provisions, the Court of Appeals has recognized that there "is no question that the Tax Court has jurisdiction of refund claims relating to taxes." *Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 380 (2016). The legislative history of the "Tax Court and the refund statute confirms that the Tax Court's appellate jurisdiction is co-extensive with the various types of refund claims authorized by the refund statute." *Id.* at 381. While in a context not involving the refund of income taxes,[21] the Court, in *Brutus 630, LLC v. Town of Bel Air*, noted that "the Maryland Tax Court has had responsibility for adjudicating appeals of claims for refunds under the refund statute." *Id.* In so concluding, the Court emphasized how the reference

---

[21] In *Brutus 630, LLC w. Town of Bel Air*, the appellants sought refund of certain sewer connection charges that it asserted were wrongly charged by the Town of Bel Air. 448 Md. 355, 358 (2016).

to "refund claims was included in [Tax-Gen. § 3-103(a)] by the code revisors in the 1988 creation of the Tax-General Article—even though refund claims did not appear in the particular predecessor statutes on which [Tax-Gen. § 3-103] was based—in recognition of the Tax Court's longstanding jurisdiction over refund claims." *Id.* at 381–82 (citing 1988 Laws of Maryland, Chapter 2 at pp. 72–74.).[22]  As a result, the Tax Court has been recognized as at least having primary jurisdiction over refund claims.  And this refund jurisdiction covers any type of refund provided for by the statute.

Whether the jurisdiction of the Tax Court over refunds is exclusive can be settled by further investigation of its legislative history.  Section 462(c) of Article 81, Maryland Code (1957, 1980 Repl. Vol.), a predecessor of Section 13-510, which governed appeals from the decisions of the Comptroller, directed any dissatisfied entity to seek review pursuant to the procedures set forth in Section 352 of Article 81 (1957).  Prior to 1966, Section 352 of Article 81, the section which delineated those procedures, provided that "[a]ny taxpayer dissatisfied with any final determination of the Comptroller upon application for revision of any assessment or refusal of refund," may appeal from "such determination to the circuit court . . .." (1957, 1965 Cum. Supp.).  The ability of the circuit court to hear these types of appeals, including instances where the Comptroller denied a claim for a refund, however, was removed from the statutory scheme in 1966,

---

[22] In the 1988 enactment of the Tax-General Article, the revisors noted that "Subsection (a)(3) of this section is new language added to clarify that the Tax Court may review a claim for the refund of tax. . . .  The Tax Court has jurisdiction to review claims for refunds of all other taxes in addition to property tax refund claims."  1988 Laws of Maryland, Chapter 2, Revisor's Note to Section 3-103(a)(3).

19

when the General Assembly vested the primary authority to hear such matters with the Maryland Tax Court. *See* 1966 Maryland Laws, Chapter 262, Section 352. The purpose of the 1966 amendment was "to provide that appeals from final determinations . . . made by the State Comptroller shall be made to the Maryland Tax Court rather than to the Circuit Court for the County or the Baltimore City Court, and to correct an error therein."[23] *Id.* For our purposes, it is evident that the General Assembly intended to remove the adjudication of refund appeals from the jurisdiction of the circuit court and maintain exclusivity of those issues within the Tax Court.

The next issue that arises then is whether interest on a refund is to be treated the same way as a refund for the purposes of the Tax Court's exclusive jurisdiction. As Appellants aptly point out, the term "refund," as defined by the Tax-General Article, does not refer to interest on a refund.[24] The Tax-General Article provides that a taxpayer who

---

[23] Following this amendment, Section 354 of Article 81, Maryland Code (1957, 1980 Repl. Vol.) read

> [a]ny taxpayer dissatisfied with the final determination of the Comptroller upon application for revision of any assessment or refusal of refund may appeal from such determination within thirty (30) days from the date of mailing of the notice thereof to the Maryland tax Court.

[24] The Tax-General Article provides four separate definitions of the term "refund," which are:

In the Part pertaining to "Out-of-State Income Tax Liability – Withholding of Income Tax Refunds," "refund" means "an individual's Maryland income tax refund or any other state's individual income tax refund." Md. Code (1988, 2016 Repl. Vol.), § 13-920(b) of the Tax-General Article.

(continued . . .)

"erroneously pays to the State a greater amount of tax . . . than is properly and legally payable" or "pays to the State a tax . . . that is erroneously, illegally, or wrongfully assessed or collected in any manner," may file a claim for a refund of that tax with the tax collector. Tax-Gen. §§ 13-901(a)(1), (a)(2).

Interest, albeit not a part of the refund definition, is inextricably intertwined with refunds statutorily. Where a claim for a refund under Section 13-901(a)(1) or (a)(2) of the Tax-General Article is approved,[25] as the refunds in the instant case were, "the tax collector shall pay interest on the refund from the 45th day after the claim is filed in the manner required in Subtitle 9 of this title to the date on which the refund is paid," [26] Tax-

---

(continued . . .)
    In the Part pertaining to "Political Subdivision Liabilities – Withholding of Tax Refunds and Payments," "refund" means "a refund of any tax imposed under Maryland law." Tax-Gen. § 13-925(c).

    In the Part pertaining to "Federal Nontax Liabilities – Withholding of Tax Refunds and Payments," "refund" means "an amount described as a refund of tax under the provisions of law that authorize its payment." Tax-Gen. § 13-930(d).

    In the Part pertaining to "Income Tax Refund Withholding – Warrants," "refund" means "an individual's Maryland income tax refund." Tax-Gen. § 13-935(b).

    [25] Pursuant to Section 13-508(a) of the Tax-General Article, in response to an assessment notice from the Comptroller, a taxpayer is provided two avenues of remedy: file an application for revision of the assessment or file a refund, but only if the assessed tax has already been paid.

    [26] The general rule is that when the State is required to refund all or part of a tax that has been paid, it is not required to provide interest on the refund absent a statute which specifically creates such an entitlement. *Lady v. Prince George's County*, 43 Md. App. 99, 108 (1979). Interest is a "creature of statute," and as such, is only recoverable by "statute or contract." *Id.* (citing *Lakefront Realty Corporation v. Lorenz*, 19 Ill.2d

(continued . . .)

21

Gen. § 13-603(a), so long as an exception does not apply.[27] The Court of Appeals has

also affirmed the Tax Court's own interpretation that, under its governing statutes, "there

is a direct relationship between tax refunds and interest on refunds," and as a "result of

that relationship, it is clear that the issues regarding refunds and interest on refunds are

---

(continued . . .)
415, 422–23, 167 N.E.2d 236, 240 (1960)); *see also* Annotation, *Right to interest on tax refund or credit in absence of specific controlling statute*, 88 A.L.R.2d 283 (1963). The practical reason behind this concept is that, the "tax collector, being a mere trustee of public funds collected for specific purposes, has no money to pay interest in the absence of statutory authority to establish a fund for that purpose." *Id.* (citing *Lakefront Realty Corporation*, 19 Ill.2d at 422–23, 167 N.E.2d at 240). The statutory entitlement to interest was created by Chapter 701 of the Maryland Laws of 1941.

[27] Section 13-603(b) provides that a tax collector may not pay interest on a refund if the claim for refund is:

> (1) made under any provision other than § 13-901(a)(1) or (2) or (d)(1)(i) or (2) of this title;

> (2) based on:

> (i) an error or mistake of the claimant not attributable to the State or a unit of the State government;
> (ii) withholding excess income tax;
> (iii) an overpayment of estimated financial institution franchise tax or estimated income tax; or
> (iv) an overpayment Maryland estate tax based on an inheritance tax payment made after payment of Maryland estate tax; or

> (3) made for Maryland estate tax or Maryland generation-skipping transfer tax more than 1 year after the event on which the claim is based.

certainly within the [Tax Court's] jurisdiction." *Science Applications Intern. Corp.*, 405 Md. at 194.[28]

As a result, because interest is inextricably intertwined with refunds, and because the Tax Court has exclusive jurisdiction over issues involving refunds, we affirm the dismissal of the suit and hold that Appellants would have had to exhaust their administrative remedies with the Tax Court before seeking judicial review in the circuit court.

The Court of Appeals has pointed out that, "[t]here are few absolutes in the law, and the rule that an administrative remedy must be exhausted before recourse is had to the courts is not one of them." *Poe v. City of Baltimore*, 241 Md. 303, 308 (1966). There are various judicially recognized exceptions to the general exhaustion requirement, permitting litigants to by-pass administrative remedies and seek relief initially in the courts. *See United Ins. Co. of Am. v. Maryland Ins. Admin.*, 450 Md. 1, 34–35 (2016) (citing *Prince George's Cty. v. Blumberg*, 288 Md. 275, 284–85 (1980) (listing the various exceptions)); *Sprenger v. Pub. Service Comm'n of Maryland*, 400 Md. 1, 24 n. 26 (2007) (recognizing the existence of the various exceptions).

---

[28] In *Comptroller of Treasury v. Science Applications Intern. Corp.*, 405 Md. 185 (2008), the Court of Appeals held that the Maryland Tax Court had jurisdiction to compel the Comptroller to pay interest on a refund, because the "question on the refund is part of the inquiry resulting from an appeal of disallowance of a claim for refund," therefore "the Tax Court had jurisdiction to consider the interest issue." 405 Md. at 195. There is no question of refund in the instant case.

23

The "constitutional exception" may be invoked under certain circumstances by a litigant when a challenge to the constitutionality or validity of a particular enactment is mounted. *Harbor Island Marina, Inc. v. Bd. of Cty. Comm'rs of Calvert Cty.*, 286 Md. 303, 308 (1979). If validly raised, the exception permits a litigant to circumvent statutorily provided administrative remedies and invoke the jurisdiction of the courts. *See id.* The "constitutional exception" to the requirement that administrative remedies must be exhausted, however, is "an extremely narrow one." *Prince George's Cty. v. Ray's Used Cars*, 398 Md. 632, 650 (2007); *see also United Insur. Co. of Am.*, 450 Md. at 35; *Montgomery Cty. v. Broadcast Equities, Inc.*, 360 Md. 438, 455 (2000) (citations omitted).

The limited scope of the exception is grounded, in part, in the rationale that, "administrative agencies are fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings which are subject to judicial review." *Ray's Used Cars*, 398 Md. at 650–51 (quoting *Broadcast Equities, Inc.*, 360 Md. at 451 n. 8). The Court of Appeals has further recognized that "when a constitutional issue is raised in an adjudicatory administrative proceeding, and resolution of the issue is necessary for a proper disposition of the case, the agency's failure to decide the constitutional issue constitutes error." *Ray's Used Cars*, 398 Md. at 651–52 (citing *Broadcast Equities, Inc.*, 360 Md. at 451 n. 8; *Holiday Point Marina Partners v. Anne Arundel Cty.*, 349 Md. 190, 199 (1998); *Maryland Reclamation Associates, Inc. v. Harford Cty.*, 342 Md. 476, 491–92 (1996)).

To come within the "constitutional exception," a challenge must be to "the statute as a whole" where the "'sole contention raised in the court action is based on a facial attack on the constitutionality of the governmental action[,]" enabling a litigant to "proceed immediately to the court to seek a declaratory judgment or equitable remedy, regardless of the availability of an administrative remedy[.]" *United Insur. Co. of Am.*, 450 Md. at 36 (quoting *Ehrlich v. Perez*, 394 Md. 691, 700 n. 6 (2006)). The attack "must be made to the constitutionality of the statute as a whole and not merely as to how the statute has been applied." *Goldstein v. Time-Out Family Amusement Centers, Inc.*, 301 Md. 583, 590 (1984); *see also United Insur. Co. of Am.*, 450 Md. at 38–39 (holding that the petitioners did not qualify for the constitutional exception because, while they alleged that they were "challenging the constitutionality of the statute in its entirety, [their] 'real protest' *focuse[d] only upon the constitutionality of a part of the statute . . .*, and more importantly, *how the statute [was] applied to a particular situation*[.]" (emphasis in original)). The constitutional exception is only available when an aggrieved party "attacks the validity of the statute as a whole, and not merely a portion of the statute or the statute's application in a particular circumstance." *Priester v. Baltimore Cty.*, 232 Md. App. 178, 212 (citing *United Insur. Co. of Am.*, 450 Md. at 39), *cert denied*, 454 Md. 670 (2017).

In the instant case, Appellants argue that they are not required to exhaust administrative remedies before the Tax Court because they are mounting a facial

constitutional attack against Section 16.[29] Relying on *State Department of Assessments and Taxation v. Clark*, 281 Md. 385 (1977), Appellants contend that they are entitled to

[29] Judge Bryant, in her Order, addressed the constitutional exhaustion exception and determined it was inapplicable:

> Although an exception to exhaustion of administrative remedies may exist where a case presents a constitutional challenge, the exception is "narrow" in that challenge must be made to the statute as a whole, rather than to the statute's application. *Goldstein v. Time-Out Amusement Centers, Inc.*, 301 Md. 583, 590 A,2d 1276 (1984); *Insurance Commission of the State of Maryland v. Equitable Life Assurance Society of the United States*, 339 Md. 596, 621–22, 664 A.2d 862 (1995). The Plaintiff[s] do not challenge the Budget and Financing Reconciliation Act as a whole, but rather, the decision to offer a lower rate of interest to individuals in their position, which represents a component of the statute.

> An additional limitation to the narrow exception is found where the constitutional challenge is intertwined and factual findings must be made. *Prince George's County v. Ray's Used Cars*, 398 Md. 632, 655–56 (2007). Plaintiffs are required to exhaust administrative remedies prior to seeking review before the court, particularly, where, as here, individual factual findings regarding entitlement to a refund in the first instance (with entitlement to any attendant interest) must be made as to each litigant. Id., 339 Md. at 623. Administrative agencies are presumed capable of resolving constitutional issues when adjudicating proceedings. *Prince George's County v. Ray's Used Cars*. 398 Md. 632, 650–51 (2007).

> The tension in this case is that *Comptroller of the Treasury of Maryland v. Wynne*, __ U.S. __, 135 S. Ct. 1787 (2015) almost makes it counter-intuitive to require administrative exhaustion in this case, since imposition of taxes upon parties similarly situated to the plaintiffs in this case, it would appear that the same rationale regarding the dormant Commerce Clause of the United States Constitution would apply to the interest rate applicable to interest payments emanating from improperly charged taxes or withheld refunds. However, the requirement of administrative exhaustion allows for an exception only when an entire statute is challenged; given the plaintiffs are not challenging an entire statute, no exception to required administrative exhaustion exists in this case and the case must be dismissed.

enjoy the benefits of the constitutional exhaustion exception because their facial challenge to Section16 is a "direct attack" on the authority of the General Assembly to set a reduced interest rate on *Wynne* refunds, about which, they allege, the Tax Court cannot opine. Appellants further posit that the "constitutional exception" to the exhaustion doctrine is implicated by any facial challenge, whether it be to a portion of an enactment or to the enactment in its entirety.

The State, relying on *Prince George's County v. Ray's Used Cars,* 398 Md. 632 (2007) and *Goldstein v. Time-Out Family Amusement Centers, Inc.*, 301 Md. 583 (1984), conversely, contends that, for the constitutional exhaustion exception to be implicated to wrest the jurisdiction of the Tax Court and vest it in the Circuit Court, a party must challenge an enactment as a whole, not in part. The State avers that because Appellants only challenge Section 16 of the Budget Reconciliation and Finance Act of 2014, and not the enactment in its entirety, they do not qualify for the exception. The State further argues that the exception does not apply because the Appellants do not "attack the statutory scheme for calculating interest 'as a whole,' but instead dispute it only as applied to *Wynne* claimants." The State, relying on *Apostol v. Anne Arundel County*, 288 Md. 667, 672 (1980); *White v. Prince George's County*, 282 Md. 641, 650–51 (1978); and *Insurance Commissioner of Maryland v. Equitable Life Assurance Society of the United States*, 339 Md. 596 (1995), further posits, that in any event, whether a challenge is in part or in whole, the exception is unavailable where the administrative remedy provided by statute is exclusive.

In the instant case, however, whether Appellants challenge Section 16 on its face or as applied or whether the challenge is only to a portion of the statute is of no consequence to our holding, because we have held that the instant dispute rests within the exclusive jurisdiction of the Maryland Tax Court. We have opined, following Court of Appeals precedent, that the constitutional exception "does not apply when the legislature intended the administrative remedy to be exclusive and there is no relief available alternative to the statutorily prescribed administrative remedy and subsequent judicial review." *Priester*, 232 Md. App. at 211 (citing *Ray's Used Cars*, 398 Md. at 653) (internal citation omitted); *see also Broadcast Equities, Inc.*, 360 Md. at 457 (stating that where "the legislature has expressly provided or intended that the administrative and judicial review remedy be the 'exclusive' remedy, the [constitutional] exception . . . is inapplicable, and a declaratory judgment or equitable action challenging the validity of an enactment 'as a whole' will not lie." (internal citations omitted)). Where the only "recognized avenue for relief is the administrative and judicial review proceedings," a litigant "may not circumvent those proceedings by a declaratory judgment or equitable action even where the validity of an enactment on its face is the issue." *Broadcast Equities, Inc.*, 360 Md. at 456; *see, e.g.*, *Bowman v. Goad*, 348 Md. 199 (1997); *Equitable*, 339 Md. at 623.

Additionally, a "facial constitutional challenge will not stand if it ultimately requires a factual exploration, such as 'when statutory classifications are challenged on equal protection grounds or under Article 46 of the Maryland Declaration of Rights.'" *Priester*, 232 Md. App. at 211 (quoting *Broadcast Equities*, 360 Md. at 457 (internal

28

citation omitted)); *see also Halici v. City of Gaithersburg*, 180 Md. App. 238, 253–54 (2008). Consequently, Appellants, in the instant case, also are precluded from proffering the "constitutional exception" to the exhaustion requirement because any determination as to the rate of interest owed on *Wynne* refunds will necessarily involve factual findings.

Appellants further contend that even if State law were to require administrative exhaustion in the instant case, their claims filed pursuant to Section 1983 of Title 42, United States Code,[30] are not subject to administrative exhaustion. Count Four of Appellants' Complaint alleges that the Comptroller's "actions and threatened actions are, or will be, taken under the color of state law, and deprive or threaten to deprive [Appellants] and all members of the [putative class] of rights secured to them by the Constitution and laws of the United States[,]" in violation of Section 1983.

---

[30] Section 1983 of Title 42, United States Code, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(2012). Section 1983 of Title 42 has since been recodified at 42 U.S.C. § 1983 (2018). While there has been no change to the substance of the statute, the version referenced is as it was when Appellants filed suit in the Circuit Court.

Section 1983 engenders a cause of action for the deprivation, under the color of state law, of any right, privilege, or immunity secured by the United States Constitution and federal law.  42 U.S.C. § 1982 (2012).  Its purpose "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S. Ct. 1827, 1830 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57, 98 S. Ct. 1042, 1047–49 (1978)).

The Supreme Court has generally held that the "exhaustion of state administrative remedies is not a prerequisite to an action under § 1983," because the legislative history of the Civil Rights Act, the predecessor to Section 1983, indicates that "the 1871 Congress did not intend that an individual be compelled in every case to exhaust state administrative remedies before filing an action" under Section 1983.  *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 507, 102 S. Ct. 2557, 2563 (1981); *see also Felder v. Casey*, 487 U.S. 131, 151, 108 S. Ct. 2302, 2313 (1988).  The purpose of Section 1983 "was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'"  *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S. Ct. 2151, 2162 (1972) (quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1879)).  Exhaustion of administrative remedies, then, in the context of a 1983 action has not always been mandated.  *Patsy*, 457 U.S. at 507, 102 S. Ct. at 2563 (noting that the legislative history of Section 1983 "supports the conclusion that [the Court's] prior

30

decisions, holding that exhaustion of state administrative remedies is not a prerequisite to an action under § 1983, did not misperceive the statutory intent").

The Court, however, has sanctioned the exhaustion state administrative remedies in the context of state tax cases in which 1983 claims have been interposed. *See Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102, 102 S. Ct. 177, 179 (1981) (providing the exception to the general rule in the context of federal courts); *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 592, 115 S. Ct. 2351, 2357 (1995) (providing the exception to the general rule in the context of state courts); *Bancroft Info. Group, Inc. v. Comptroller*, 91 Md. App. 100, 113 (1992).

The rationale for retaining exhaustion of state administrative remedies, the application of the exhaustion rule in the context of cases involving state tax schemes in which Section 1983 claims are made, is based on "principles of federalism and comity" that have generally counseled federal and state courts to "adopt a hands-off approach with respect to state tax administration." *Nat'l Priv. Truck Council, Inc.*, 515 U.S. at 586, 115 S. Ct. at 2354 (citing *Dows v. Chicago*, 11 Wall. 108, 110, 20 L.Ed. 65 (1871)). Since the enactment of Section 1983, Congress and the Supreme Court "have shown an aversion to federal interference with state tax administration." *Id.* As such, the Court has confirmed that the states "are afforded great flexibility in satisfying the requirements of due process in the field of taxation," should disputes arise. *Id.* (citing *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Bus. Reg.*, 496 U.S. 18, 110 S. Ct. 2238 (1990)).

31

Appellants, however, argue that they do not have to exhaust administrative remedies because of the holding in *Hibbs v. Winn*, 542 U.S. 88. 124 S. Ct. 2276 (2004), because they are seeking interest on a refund and not challenging the "collection of revenue," and as such can pursue their 1983 claim in state court. In *Hibbs*, taxpayers challenged an Arizona law that authorized income-tax credits for payments to organizations that awarded educational scholarships and tuition grants to children attending parochial schools. 542 U.S. at 92–93, 124 S. Ct. at 2281. Winn, and the other Arizona taxpayers, brought their action in federal court, seeking to enjoin the law's operation, on Establishment Clause grounds. 542 U.S. at 93, 124 S. Ct. at 2281. The State sought dismissal of the suit, contending that federal law barred the federal district court from exercising jurisdiction over the matter, pursuant to the Tax Injunction Act ("TIA"), 28 U.S.C. §1341,[31] arguing that an invalidation of the statute would "restrain the 'assessment' of taxes 'under State law.'" 542 U.S at 96, 124 S. Ct. at 2282–83.

The district court agreed with the State and held that the Tax Injunction Act required dismissal of the suit. 542 U.S. at 96, 124 S. Ct. at 2283. The Court of Appeals for the Ninth Circuit, however, reversed, holding that "a federal action challenging the granting of a state tax credit is not prohibited by the [TIA]" and noted that a tax credit did not "adversely affect the state's ability to raise revenue," as "the relief requested . . . would result in the state's receiving more funds that could be used for the public benefit."

---

[31] The Tax Injunction Act, 28 U.S.C. § 1341, provides, that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

32

*Id.* (internal citation omitted). The Supreme Court granted certiorari to consider "whether the TIA bar[red] constitutional challenges to state tax credits in federal court." *Id.*

The Court held that the TIA, which prohibits a lower federal court from restraining "the assessment, levy or collection of any tax under State law," does not prohibit judicial interference with the operation of, or compliance with state tax laws; rather, it proscribes interference only with those aspects of state tax regimes that are needed to produce revenue. 542 U.S. 104–08, 124 S. Ct. at 2287–89. The statute in question, then, could be challenged in federal court because it did not impact the state's ability to raise revenue, as the taxpayers did not contest their own tax liability nor seek to impede Arizona's receipt of tax revenues. *Id.* Thus, the federal district court could exercise its jurisdiction over the matter and hear the case on the merits without exhaustion of state administrative remedies.

Appellants' reliance, thus, on *Hibbs* is misplaced. Unlike the taxpayers in *Hibbs*, Appellants, in the instant case, contest a version of their own tax liability, by way of seeking a greater rate of interest on their returns, which would, therefore, affect the State's overall revenue stream.

The Supreme Court, however, has repeatedly declared, that "taxpayers are barred by the principle of comity[32] from asserting § 1983 actions against the validity of state

---

[32] The doctrine of comity reflects

a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a

(continued . . .)

tax systems in federal courts." *McNary*, 454 U.S. at 116, 102 S. Ct. at 186. Taxpayers "must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in [the Supreme Court]."[33] *Id.* (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 605, 95 S. Ct. 1200, 1209–09 (1975); *Matthews v. Rodgers*, 284 U.S. 521, 526, 52 S. Ct. 217, 220 (1932)). The Court's holding in *McNary* "acknowledges the appropriateness of resolving § 1983 tax claims according to the procedures established by the states, including exhaustion of administrative remedies." *Bancroft Info. Group, Inc.*, 91 Md. App. at 113 (citing *McNary*, 454 U.S. at 108 n. 5, 102 S. Ct. at 181).

We have previously announced that the "state may, in a § 1983 action, require a complaining taxpayer first to exhaust available state administrative remedies[,]" thus allowing "the agencies and courts with the most expertise in the state's tax system to resolve a complaint as quickly as possible." *Id.* at 114 (citing *Dows*, 11 Wall. At 110);

---

(continued . . .)

> continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 112, 102 S. Ct. 177, 184 (1981) (quoting *Younger v. Harris*, 401 U.S. 37, 44, 91, S. Ct. 746 (1971)).

[33] The Supreme Court has held that a "plain, adequate, and complete" state remedy must meet "certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512, 101 S. Ct. 1221 (1981) (emphasis in original). State "remedies are plain, adequate, and complete if they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax." *In re Gillis*, 836 F.2d 1001, 1010 (1988) (citing *Rosewell*, 450 U.S. at 514, 101 S. Ct. at 1229).

*see also Nat'l Priv. Truck Council, Inc.*, 515 U.S at 592, 115 S. Ct. at 2357 (holding that when "a litigant seeks declaratory or injunctive relief against a state tax pursuant to § 1983 . . . state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate legal remedy.").  The administrative remedies provided by the Tax-General Article, as described in detail above, including suit before the Tax Court, are "plain, adequate, and complete," thereby obviating Appellants' ability to circumvent the exclusive jurisdiction of the Tax Court by asserting claims pursuant to Section 1983.

In conclusion, Appellants must exhaust their administrative remedies before the Tax Court with regard to the amount of interest on their refund claims.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT**.